WILSON et al. v. CITY OF HOLLIS et al.

No. 30211. Oct. 19, 1943.

Rehearing Denied Nov. 9, 1943.

*142 P. 2d 633.*

Ross Cox, of Hollis, and Robinson & Oden, of Altus, for plaintiffs in error.

Norman E. Reynolds and W. Otis Ridings, both of Oklahoma City, for defendants in error.

BAYLESS, J. This is a mandamus action brought by the plaintiff L. A. Armstrong, bondholder, for himself and all others similarly situated. He sought by the remedy of mandamus to require the board of education to provide in its budget for the fiscal year 1940-41 for funds with which to pay the 1929 installments of the paving assessments levied against the property of the board of education, together with the accrued penalty thereon, and to require said board of education to make provision in its budget for ensuing years for the funds with which to pay the remaining delinquent installments of the paving assessments on its property.

The pertinent allegations made by the plaintiff in his petition are essentially in conformity with the facts of the case hereinafter stated.

In answer to the alternative writ of mandamus issued, the board of education alleged that the petition of the plaintiff did not state facts sufficient to constitute a cause of action and that same was barred by the statute of limitation; it also set up in its answer a state of facts essentially in accord with the statement of facts hereinafter set out.

The facts of this case, as stipulated to by the parties, are these: During the months of February, March, and April, 1927, the city of Hollis issued street improvement bonds in connection with the paving of three districts; that the plaintiff Armstrong owns an unpaid bond against each district; that the board of education of the city of Hollis owned property in each district, all of which was used exclusively for school purposes, and assessments were levied against such porperty; that the assessments for the years 1929 to 1936, both inclusive, are delinquent and unpaid; that the principal amount due in September, 1929, was $1,420, and the interest and penalty thereon, as provided by law, amounts to $1,874.86; that for the fiscal year 1929-30 a levy of 15 mills, the full amount allowed by law, was made for current expense purposes; that no demand was made by the city of Hollis or the bondholder that an estimate be made by the board of education to take care of the assessments for the fiscal year 1929-30; that none of the bonds in question have been retired; that the assessments levied against the lots in said district were payable in ten equal installments with interest thereon at the rate of 7% per annum until maturity; that the statute provides for interest on delinquent installments at the rate of 12% per annum; that such bonds were payable in their numerical order on the 1st day of October, 1936.

A peremptory writ of mandamus was issued requiring the board of education to make provision in the budget of the school district for the fiscal year 1940-41 for the payment of the assessments that were due and payable September 1, 1929, with 7% interest per annum from date until paid. The school board appeals. The trial court continued the application as to the years 1930 to 1936, both inclusive.

The board of education for reversal urges that the action is barred by the statute of limitations and laches. The plaintiff in support of the judgment of the lower court argues: (1) That mandamus is not a civil action and there-

fore the statute of limitations does not apply; (2) that the paving assessment lien, created by statute, like a lien for ad valorem taxes, continues until paid and for this reason is not barred by any statute of limitations; (3) that the facts disclosed by the record in this case do not sustain a defense on the ground of laches, for the evidence does not show the delay resulted in a disadvantage to the board of education; that laches is rarely applied to executed rights as distinguished from executory rights; that the defense of laches will not be recognized where the demand is admitted and the duty continuing; that the board of education is estopped from defending on the ground of laches because of its violation of its mandatory duty; (4) that the application of a statute of limitation or the doctrine of laches would impair the obligation of the contract of the bondholders and therefore would violate section 15, art. 2, Constitution of Oklahoma, and para. 1, sec. 10, art. 1, Constitution of the United States; and (5) that plaintiff has complied with Senate Bill 164, S. L. 1939, by commencement of this action within the time therein specified and thereby prevented the running of any statute of limitation.

It will be noted at the outset that the trial court in issuing a peremptory writ of mandamus directed only that the board of education make provision in its budget for the fiscal year 1940-41 for the payment of the assessments which were due and payable September 1, 1929, with 7% interest per annum, from the foregoing date, to wit, September 1, 1929. In this appeal the plaintiff (bondholder) is attempting to sustain that judgment.

The statute applicable to this suit was passed by the Legislature in 1923. The foregoing statute authorizes cities to create street improvement districts; levy assessments against the property of such districts; by the provisions of the act said assessments are payable in ten equal annual installments bearing interest at the rate of 7% per annum

until paid; the due date of the first installment is on or before the 1st day of September next succeeding passage of the ordinance creating the district (11 O. S. 1941 § 103); if an installment becomes due and is not paid, it and the interest accumulated thereon bear interest at the rate of 12% per annum until paid (sec. 105); all payments of assessment installments, together with the interest thereon, shall be to the city treasurer for the creation of a special fund to pay the bonds and interest coupons issued against such assessments; after the payment of all bonds and interest thereon, any surplus remaining shall be expended for maintenance and repairs of streets in the district (sec. 105); such special assessments and each installment thereon are declared to be a lien against the lots and tracts of land in the district from the date of the first publication of the ordinance, "coequal with the lien of other taxes and prior and superior to all other liens against such lots or tracts of land, and such lien shall continue as to unpaid installments and interest until such assessments and interest thereon shall be fully paid . . ." (sec. 103); provision is made for notice by publication of the maturity date of installments, and the act provides that upon delinquency of payment the city clerk shall certify said delinquent installments and interest to the county for the collection of same as other delinquent ad valorem taxes (sec. 106); said statute provides for the issuance of negotiable coupon bonds in the aggregate amount of such assessments, bearing date 30 days after the publication of the ordinance (sec. 151). Such bonds are mature and payable October 1st after the due date of the last installment of the assessment and bear interest at the rate of 6% per annum payable October 1st next succeeding the due date of the first installment and semiannually thereafter until the maturity date of the bonds and 10% after maturity; the bonds are payable from the assessments levied upon the lots and tracts of land in the district and from the accumulation of interest and penalty provided; the bonds shall be issued in series and shall be payable in their numerical order; they shall be registered by the clerk and treasurer of the city or town, who shall keep the name of the holder and his address; the city treasurer is authorized to accelerate the bonds, and is directed to pay the bonds and accumulated interest as rapidly as the fund is built up; if the city treasurer fails or refuses to pay the bonds, as directed by the statute, it is provided that he may be forced to do so by a mandamus action (sec. 151).

The amount of the assessment and interest, when collected, constitutes a fund out of which the bondholder is paid the principal of his bond and the accumulated interest, which is 6% unless same is increased, if ever, by the addition of penalty interest after maturity of the bonds.

When we undertake to ascertain what the Legislature had in mind when it authorized the creation of street improvement districts and permitted the inclusion of property owned and used for public purposes therein and the assessment of a proportionate share of the expense of the improvement against such property, we must keep in mind the essential differences between property owned and used for private purposes and property owned and used for public purposes, and must look to the provisions made for raising the funds to defray the share assessed against property owned and used for public purposes, and must see what limitations are placed on the municipality's obligation to pay and what rights are expressly given or withheld from the holders of the bonds. When the act is studied and applied to the situation before us, we are of the opinion limitation or laches is not a bar to plaintiff.

The bondholder contends that by reason of the language of section 100, supra, reading: "Any property which shall be owned by the city, town or county, or any board of education or school district, shall be treated and considered the same as the property of other

owners, . . ." the property owned and used by the school district is subject to the same treatment in respect to delinquencies and penalties that private property in the district receives. It is to be observed that our paving law deals with two types of property, to wit: (1) private property, and (2) property owned and used by the above specified political subdivisions. It is to be observed further that our paving law falls roughly into two divisions: (1) those parts dealing with the creation of the district and the attaching of the obligation, and (2) those dealing with the enforcement of the obligation thus created against the property in the district. We are here concerned with the second. In reading the paving law it appears that section 100, supra, contains all of the reference to property owned and used for public purposes by political subdivisions that is to be found in the paving law, and it must be assumed that these special provisions are there by design. These special provisions control with respect to property owned and used for public use by these political subdivisions, and those provisions of the paving law that relate to the enforcement of the assessment against privately owned property cannot apply to the property of the school district involved in this case.

Some confusion appears in our decisions arising out of the consideration of section 100, supra, and the effort to make applicable to public property *all* of the provisions of the act relating to private property. It is to be observed that the act undertakes to make the amount due on the bonds a lien against all of the property in the district; and, while it is undoubted that this was done with respect to private property, it also is equally undoubted that this obligation was not made a true lien against public property because of the lack of a method of enforcement. City of Drumright v. McCormick, 118 Okla. 140, 247 P. 25. It is an obligation created by statute that must be paid in the statutory manner and it is idle to consider it a lien in the accepted sense. 42 O. S. 1941 § 1 et seq. Another instance of the inapplicability of a provision of this act to public property relates to the right of the owner of private property to elect to pay at one time the entire assessment against his property and thus relieve himself from further obligation with respect to the paving district; whereas, by the express terms of sec. 100, supra, the proper officials are directed to provide annually by the levy of taxes a sufficient sum to pay the maturing annual assessment and interest thereon against public property. Another instance that bears out the distinct difference between privately and publicly owned property relates to the duty imposed to pay the obligation. An owner of private property may decide not to pay the assessment against his property and to permit it to be sold according to law in satisfaction thereof. The language of section 100, supra, is imperative in its directions to public officials, and the same rule of public policy that prevents the forced sale of publicly owned and used property to pay the obligation likewise prevents the officials of the school district, in this case, deciding to not pay the obligation and to permit the property to be taken from public ownership and use to satisfy the obligation.

We do not think it was the intention of the Legislature to penalize the taxpayer for interest and penalties on installments delinquent due to the failure of public officers to do what they are directed to do, as provided in section 100, supra. The context of the paving law, and section 100, supra, in particular, does not disclose that the Legislature contemplated that there would be a delinquency with respect to the annual assessments due against property owned and used for public purposes, and it is not reasonable to assume that the Legislature contemplated that the public officials would fail to levy these annual taxes to pay the maturing installments and interest. We are of the opinion that the Legislature did not leave this matter to the discretion of the public officials to determine whether to

pay these maturing installments from their taxes levied for municipal activities, because in some instances the officials might find themselves without sufficient funds to carry on all of their activities and could therefore decide not to pay the maturing annual assessment, but the Legislature expressly imposed upon them the duty of making an annual levy for this purpose.

We hold that the Legislature provided, as it had a right to do, the amount that should be paid on public property and the manner in which it should be paid. We therefore hold under this act that the only amount that public property may be liable for is the proportionate amount assessable to it, which amount is payable in ten installments with interest at the rate of 7% per annum as of the date each installment is due, and that no delinquency that will carry with it additional interest or penalty can accrue against public property, and that the provisions relating to delinquencies and penalties were not intended to apply to municipalities.

It was the view urged by bondholders that a municipality would be liable for the penalties attached to delinquencies that resulted in our decision in Independent School Dist. v. Exchange Nat. Co., 164 Okla. 176, 23 P. 2d 210. In that decision we expressly rejected the notion that a municipality ought to be held liable for penalty because of the failure of its officials through inadvertence or otherwise to levy taxes to pay these maturing installments. It was indicated that the bondholder was not left entirely without remedy and that mandamus could be resorted to. This left open, however, the question of whether interest, as differentiated from penalty for delinquencies, continued to accrue against an unpaid matured installment.

In reaching this conclusion, we are forced to re-examine some of our earlier decisions and to differentiate some and bring others into conformity herewith.

In City of Drumright v. McCormick, 118 Okla. 140, 247 P. 25, we permitted a money judgment to be taken against the city for its share of the expense of a sewer district, but only for the interest, as it does not appear that penalty for delinquency was sought. It is to be noticed that these sewer warrants were payable in three years and that suit was brought promptly.

In the later decisions of Independent School Dist. v. Exchange Nat. Co., supra, when an effort was made to enforce the accumulated annual interest and penalties for delinquencies by way of a money judgment, we took note of the time that had elapsed. The burden that was being thrust upon the taxpayers by the failure of their officials to perform the statutory duty and what was characterized as the willingness of bondholders to permit these accumulations for their ultimate benefit were used as the reason to deny the right to a money judgment, and we overruled entirely Drumright v. McCormick, supra, and relegated the bondholder to seek mandamus against the officials to make the annual levies. This case will illustrate the accumulated burden that could rest upon a school district, as mentioned above.

Subsequent limitations on the remedy of mandamus, as in St. Louis & San Francisco Ry. Co. v. Sanders, 154 Okla. 159, 7 P. 2d 161, where it was held that mandamus had to be obtained in the year in which the installment fell due, a thing usually impracticable, and as in St. Louis & San Francisco Ry. Co. v. Choctaw, 173 Okla. 312, 48 P. 2d 312, where it was held that general fund money of a specific fiscal year could not be applied to the payment of obligations of a prior fiscal year, rendered this remedy virtually ineffectual.

In both cases it was assumed and held that the levy required to be made annually under section 100, supra, was a current expense and governed by the limitations of section 26, art. 10, and section 9, art. 10, as amended, Constitution of Oklahoma. This is not correct.

This annual obligation is not a contractual obligation within the meaning of section 26, supra, but is an obligation fixed by operation of a legislative act under section 7, art. 10, Constitution of Oklahoma, City of Perry v. Johnston, 106 Okla. 32, 233 P. 679, and Clark v. City of Weatherford, 143 Okla. 165, 288 P. 278. The discussion in Smartt v. County Com'rs, 67 Okla. 141, 169 P. 1101, in which a distinction between obligations that were voluntarily assumed by a county for its government and were within the debt limitations of section 26, art. 10, supra, and those obligations that are not voluntary but were thrust upon the county by superior power, clearly applies here. See Le Flore v. St. Louis & S. F. Ry. Co., 185 Okla. 440, 93 P. 2d 1087, for a discussion illustrating obligations of a political subdivision that are within and without said section 26, art. 10, supra. Once the improvement district is created and the share of the expense chargeable to the municipality is legally fixed, the duty to raise the funds annually is mandatory. Neither the governing officials of the municipality nor any other public official charged with the performance of any duty in levying the municipality's taxes has any discretion to omit to levy to raise this money. In referring to this annual expense as noncontractual, we are not unmindful of our discussion in City of Lawton v. Morford, 146 Okla. 222, 293 P. 1068. We think the facts and issues in that case differ materially from this case, but insofar as it may appear that the holdings are inconsistent with respect to the nature or governing principles of the assessment and the annual levies to pay it, that case is overruled. To the extent that St. Louis & San Francisco R. Co. v. Sanders, supra, and St. Louis & San Francisco R. Co. v. Choctaw, supra, are in conflict herewith, they are expressly overruled.

Where levies have not been made, as required in section 100, supra, and remain due and owing at the maturity of the bonds, the method of annual levies does not serve. The law says they must be made annually and this precludes the notion that there is authority under section 100, supra, to levy all matured unpaid installments in any one year after the maturity of the bonds. The fact that the law does not permit interest to accrue on matured installments and to accumulate thereagainst renders it highly desirable that the bondholder have a method to recover this obligation. It especially becomes necessary to do this in view of the situation bondholders find themselves in as the result of the hampering effect of some of the decisions we have overruled or limited herein.

We are of the opinion that it was a mistake to overrule or limit City of Drumright v. McCormick, supra, as was done in Independent School Dist. v. Exchange Nat. Co., supra. In this latter decision the language of City of Sapulpa v. Land, 101 Okla. 22, 223 P. 640, discussing the character of taxes and special assessments as debts, was adopted, and from the limited character thus allowed to special assessments the court held in Independent School Dist. v. Exchange Nat. Co., supra, that remedy of judgment in a civil action was not authorized by the paving law and the court could not undertake to allow what the Legislature had not allowed; and, further, held that the statutory method of annual levies was effectual and exclusive, and, as a last resort, the bondholder could resort to mandamus to force the making of the annual levies. The issues in the Sapulpa Case justified the discussion noted in the Independent School Dist. Case, but otherwise they were so different from the issues involved in the latter case that the earlier case offered no analogy to the latter case or this case. The limitations on the remedy by mandamus have already been noted.

Thus it can be seen that our previous holdings have gradually brought the bondholder to the place where, if the officials have not made the annual levies, and the bondholder has not sought mandamus or was denied that relief under our decisions, he is without rem-

edy. If our previous holdings in their totality are correct, then it must be assumed that it was the legislative intention to render the collection of street improvement assessments against the property owned and used by the school district impracticable, if not impossible, when they had become delinquent, irrespective of whether such delinquency was intentional or inadvertent. Viewing the situation thus, we must decline to ascribe any such intention to the Legislature. Our decisions must be brought into harmony with the legislative intent.

In Smartt v. Board of County Com'rs, supra, the county had appropriated and levied a tax to pay for the care and feeding of prisoners in the county jail, a mandatory duty imposed on the county, but the cost of this matter had exceeded the appropriation and there existed a deficit. It was asserted that section 26, art. 10, supra, and other limitations on municipal indebtedness, precluded the payment of this deficit, but this court, in effect, created a remedy by permitting the sheriff, who had incurred the expense represented by the deficit, to recover a money judgment against the county in a civil action.

The duty of the school district in this instance is no less imperative and the obligation here involved is statutory as it was there, and it seems to us that a money judgment in a civil action is as permissible here as there.

We therefore hold judgment may be rendered against the school district whose property has been assessed a portion of the cost of a public improvement for the principal of the unpaid annual installments, plus the interest due on each on the date of its maturity. This judgment may then be paid as other judgments are paid under section 28, art. 10, Const. of Oklahoma, and 62 O. S. 1941 § 431 et seq. To this extent Independent School Dist. v. Exchange Nat. Co., supra, First Nat. Bank v. Board of Education, 174 Okla. 164, 49 P. 2d 1077, and City of Shawnee v. Exchange Nat. Co., 185 Okla. 451, 94 P. 2d 250, are overruled.

The judgment of the trial court granting mandamus for one year and holding the other matter in reservation is hereby set aside and this cause is remanded to the trial court, with directions to take further proceedings in conformity with the views expressed herein.

CORN, C. J., GIBSON, V. C. J., and OSBORN, WELCH, and DAVISON, JJ., concur. RILEY, J., dissents. HURST, J., concurs in conclusion. ARNOLD, J., concurs in part, dissents in part.

––––––

HURST, J. (concurring in part and dissenting in part). I concur in the conclusion that a writ of mandamus should not issue to compel the respondent members of the board of education to now make provision ·in the estimate of needs of the school district for payment of the 1929 paving installment, (1) because the proceeding is barred by laches for the reasons stated in an opinion filed herein on October 6, 1942 (13 Okla. Bar Journal 1292), and (2) because a municipality is without authority to levy taxes during one fiscal year to pay paving assessments that were due and payable during a prior fiscal year. See my special concurring opinion in Board of Education v. Johnston, 189 Okla. 172, 115 P. 2d 132, and authorities there cited.

The question as to whether a money judgment may be rendered against a municipality for delinquent paving assessments is not before us. The respondents in this mandamus proceeding are the individual members of the board of education. The school district is not sued in its corporate capacity as required by 70 O. S. 1941 § 183,·and is not a party to this suit. No money judgment is here sought. Such issue was not framed by the pleadings, is not presented by the petition in error, and is not briefed. And since the necessary parties are not· before us and the issue is not presented, two elements of jurisdiction are lacking — jurisdiction of the necessary party and jurisdiction to render the particular judgment. All that

is said on the question in the majority opinion is, therefore, dictum. We should withhold our decision on the question until a case involving the issue, and of which we have jurisdiction, is presented, at which time we will have the benefit of briefs and argument by interested parties. Particularly is this true where, as here, two lines of decisions are being overruled.

"Matters not presented to the trial court will not be considered (on appeal) for the purpose of advising the trial court of the action it ought to take on their being subsequently presented to it for consideration." 2 R. C. L. 181. See, also, 3 Am. Jur. 361; 4 C. J. 649; 5 C. J. S. 36.

The court is on solid ground in denying the writ of mandamus. It is not necessary or proper, in order to justify the decision that a writ of mandamus shall not issue, that the court point out, by way of dictum, that the bondholders have other rights not being asserted. I know of no reason why paving bondholders are such favorites of the law as to justify such action. They should be accorded their legal rights, but should be required to assert their rights and defenses as is required of other litigants. It is a well known fact that the higher numbered paving bonds, issued under the 1923 law, are generally of doubtful value. The contractor, who takes the bonds in payment for the work (11 O. S. 1941 § 130), increases the cost of the paving to make allowance for that fact. And if the bonds are sold by the contractor, the purchaser usually buys them on that assumption, on a speculative market, at a fraction of their par value.

Not only should this court refrain from expressing an opinion on the question as to whether a money judgment can be rendered against a municipality for recovery of delinquent paving assessments, but several conclusions reached by the majority are of doubtful soundness.

The question as to whether a municipality is liable for no interest or penalty after the due date of each annual installment is at least debatable. And the principle so announced will be violated by permitting a money judgment to be rendered, since such judgment will draw interest at the rate of 6 per cent per annum. 15 O. S. 1941 § 274.

The question as to whether a money judgment can be rendered in such a case is also debatable. It could be well argued that the statute contemplates that the sole remedy of the bondholder is to compel the making of the annual levy to pay the maturing installment and to compel the city or town treasurer to issue a warrant for payment of such installment. The fact that the statute (11 O. S. 1941 § 107) specifically creates a cause of action against individual property owners only may indicate that the Legislature intended that no such civil action can be maintained against a municipality.

The majority opinion is obscure as to the nature of the judgment directed to be rendered. Is it to deny mandamus or to enter a money judgment? If the former, the result reached is correct. If the latter, it is incorrect because the trial court is without jurisdiction for the reasons above stated.

The opinion seems to imply that an action for a money judgment is not barred by any statute of limitations. It neither points out the applicable statute nor states when the cause of action accrued. Such a conclusion is certainly questionable. The school district is not a party to the bonds. Its liability is not contractual, but is imposed by law. Why did not the cause of action for a money judgment accrue as to each installment when the same became delinquent? Here the last installment became delinquent on September 1, 1936, or more than seven years ago. Why is the action not barred by the three-year statute found at 12 O. S. 1941 § 95 (2)?

The school district should be left free to interpose any defense it chooses, including the defense of limitations, if and when a civil action is filed to re-

cover a money judgment on the delinquent assessments.

For the reasons stated, I concur in the conclusion that a writ of mandamus should not issue, but dissent to the reasoning and other conclusions.

ARNOLD, J. (concurring in part and dissenting in part). The obligation of a school district to make an annual levy by which the funds may be provided to retire street improvement assessment installments is one imposed by law. This is the only method by which money may be collected with which to pay the school district's proportionate part of the assessment. The duty to make an annual levy is a continuing one. Mandamus against the derelict officers is the only remedy available to the bondholder. I concur in the interpretation placed on 11 O. S. 1941 § 100, but dissent to the holding that a judgment may be rendered against the board of education.

I am authorized to state that Mr. Justice RILEY concurs in the views herein expressed.