The BOARD OF COUNTY COMMISSION-ERS OF LINCOLN COUNTY, Oklahoma, Plaintiff in Error,

v.

The OKLAHOMA PUBLIC EMPLOYEES RETIREMENT SYSTEM, Defendant in Error.

No. 41270.

Supreme Court of Oklahoma.

July 6, 1965.

As Corrected July 13, 1965.

Joe Young, County Atty., Paul M. Vassar, Asst. County Atty., Chandler, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Burck Bailey, Asst. Atty. Gen., for defendant in error.

HODGES, Justice.

This is an appeal from the District Court of Oklahoma County, Oklahoma, involving a judgment of that court sustaining the validity of the Oklahoma Public Employees Retirement System Act and its irrevocable applicability to the County of Lincoln, Oklahoma.

The Act in question was enacted in 1963, by the Oklahoma Legislature (S.B. No. 62, c. 50, p. 60, 1963 S.L.; 74 O.S.Supp.1963, §§ 901–928) with the emergency clause attached thereto. The obvious intent of the Act was to provide for the establishment of a retirement system for state and county employees. The Act provided that each county in the State and the State of Oklahoma was an "eligible employer." This appeal relates only to county participation which provides in Sec. 910(1) Title 74 O.S.Supp. as follows:

"(1) An eligible employer may join the system in January of any year commencing January 1, 1964. Application for affiliation shall be in the form of a resolution approved by the governing or legislative body of the eligible employer or by any other body or officer authorized by the law or recognized by the board to approve such resolution or action; provided, that no county shall become a participating employer, except by the adoption of a resolution therefor, which shall be published once each week for two consecutive weeks in the official county newspaper or, if there is none, in a newspaper of general circulation therein and no such resolution shall take effect until sixty days after its final publication, and if, within sixty days of its final publication, a petition signed by a number of electors equal to not less than five percent of the number of electors who voted at the last preceding general election in such county shall be filed in the office of the clerk of such county, demanding that such resolution be submitted to a vote of the electors, it shall not take effect until submitted to

a referendum and approved by a majority of the electors voting thereon. Upon the filing of a certified copy of such resolution with the board, such election shall be irrevocable and the employer shall become a participating employer on January 1 of the year immediately following the filing of such election with the board."

On the 7th day of October, 1963, a resolution was passed by the Board of County Commissioners of Lincoln County, Oklahoma, resolving that said county should be placed under and participate in the Oklahoma Public Employees Retirement System as authorized by Senate Bill No. 62 of the 1963 Legislative Session of the State of Oklahoma. That said resolution was duly forwarded and filed in the office of the Oklahoma Public Employees Retirement System.

Such resolution was published for the required sixty days in the Wellston News, but the proof of publication was not filed until after January 1, 1964. There was no petition filed within the sixty days of the final publication demanding voter approval of the resolution.

On December 30, 1963, the County Clerk of Lincoln County notified the Executive Secretary of the Retirement System (defendant in error) of Lincoln County's desire not to participate.

On January 15, 1964, the Commissioners filed formal application to withdraw which was denied on February 5, 1964.

Thereafter Lincoln County filed its petition for review of the System's action in the district court of Oklahoma County.

In addition to the facts hereinabove set forth, it was also stipulated as follows:

"1. As of May 31, 1964, there were 14,004 State Employees participating as members of the Retirement System.

2. As of May 31, 1964, there were ten (10) counties participating as employers in said System, and 798 county employees participating as members of said System.

3. Five additional counties are scheduled to join said System on January 1, 1965.

4. As of June 30, 1964, Lincoln County has seventy-one (71) male employees and thirteen (13) female employees. Salaries and wages paid out to said employees from January 1, 1964, to June 30, 1964, total $132,113.18. As of June 30, 1964, the amount withheld as employee contribution to the System (though not paid over to the System) totals $3,965.38. As of June 30, 1964, the amount of the county's employer contribution (though not paid over to the System) totals $3,963.46.

5. Salaries and wages paid out to Lincoln County employees during June, 1964, totals $21,871.93. The amount withheld as employee contributions for the month of June, 1964, (though not paid over to the System) totals $656.49. The amount of the County's employer contribution for the month of June, 1964, (though not paid over to the System) totals $656.17.

6. There was no appropriation in the Lincoln County budget for the employer's contribution at the time the Resolution to participate in the System was adopted.

7. It is agreed that the appeal to the District Court of Oklahoma County was properly lodged and that said Court has jurisdiction of this cause.

8. It is agreed that the affidavit of A. Hayworth Robertson filed herein may be considered the testimony he would give in this cause.

9. The Lincoln County budget for fiscal year 1963–64 totaled $290,-269.60; the levy was 9.9 mills; the total assessed valuation for said period was $24,111,961.

10. The Lincoln County valuation of 1964 reflects an increase of $455,-201 (see Exhibit A.)"

The plaintiff in error (Board of County Commissioners of Lincoln County) presents the following propositions for reversal.

"Proposition I. The Oklahoma Public Employees Retirement System, Chapter 50, Session Laws 1963, is unconstitutional insofar as counties may participate, being in violation of Article 10, Section 26 of the Constitution of the State of Oklahoma.

"Proposition II. The Oklahoma Public Employees Retirement System is unconstitutional for the reason that the same attempted to carry the emergency clause.

"Proposition III. The Oklahoma Public Employees Retirement System being a bill for raising revenue must originate in the House.

"Proposition IV. Error of the Court in holding that Counties once making a resolution to come under the Oklahoma Public Employees Retirement System could not thereafter withdraw.

We shall consider these in the order named.

The first contention for reversal concerns the application of Article 10, Section 26 of the Oklahoma Constitution to the Retirement Act. It is urged that the funds necessary to carry out the action of the Board of Commissioners would require an appropriation for one fiscal year to be levied for each succeeding fiscal year without authorization by popular vote as provided by Article 10, Section 26 of the Oklahoma Constitution. Reliance is had upon the following authorities: Board of Commissioners of Tulsa County v. Summers, 181 Okl. 312, 73 P.2d 409; Independent School Dist. No. 1, McIntosh County v. P. A. Howard, Okl., 336 P.2d 1097, and Meder v. City of Oklahoma City, Okl., 350 P.2d 916.

Article 10, Sec. 26 of the Constitution reads as follows:

"No county, city, town, township, school district, or other political corporation, or subdivision of the State, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount including existing indebtedness, in the aggregate exceeding five per centum of the valuation of the taxable property therein, to be ascertained from the last assessment for State and county purposes previous to the incurring of such indebtedness: Provided, That any county, city, town, township, school district, or other political corporation, or subdivision of the State, incurring any indebtedness, requiring the assent of the voters as aforesaid, shall, before or at the time of doing so, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within twenty-five years from the time of contracting the same."

All of the above cases cited by the appellant deal with instances where the debt incurred being voluntary as distinguished from a mandatory obligation imposed by the Legislature. In the Tulsa case, supra, the fees of an examining physician of the insanity board were involved. In the McIntosh County case a contract for the purchase of typewriters was the debt involved. In the Meder case it was sought to enjoin a lease of sewer facilities. Each of these

cases involved a contractual obligation between an individual and a municipality.

As opposed to these cases, we have in the instant case a mandatory obligation imposed by the Legislature where those responsible elected to come under the purview of the legislative enactment. We are concerned with the operation of a public law, not a private contract. This situation is not new in this jurisdiction, and the following cases have been determined by this court adversely to the contention of the plaintiff in error. Wilson v. City of Hollis, 193 Okl., 241, 142 P.2d 633, 150 A.L.R. 1385, and City of Claremore v. Oklahoma Tax Commission, 197 Okl. 223, 169 P. 2d 299.

■ The restrictive effect of this constitutional provision is inoperable where the contractual obligation is imposed upon a political subdivision by legislative enactment.

In Wilson v. City of Hollis, supra, the Board of Education refused to provide funds with which to pay delinquent installments on paving assessments levied against its property, and we held:

"* * * This annual obligation is not a contractual obligation within the meaning of Sec. 26, supra, but is an obligation fixed by operation of a legislative act. * * * Once the improvement district is created and the share of the expense chargeable to the municipality is legally fixed, the duty to raise the funds annually is mandatory. Neither the governing officials of the municipality nor any other public official charged with the performance of any duty in levying the municipality's taxes has any discretion to omit to levy to raise this money. * * *"

In City of Claremore v. Oklahoma Tax Commission, supra, we stated that if the debt is an obligation imposed upon the city by an Act of the Legislature the contractual obligation is not violative of Section 26, Article 10 of the Constitution.

We conclude and hold that the Act is not violative of Article 10, Section 26 of the Oklahoma Constitution.

■ The plaintiff next contends that the Oklahoma Public Employees Retirement System Act is unconstitutional for the reason the Act attempted to carry the emergency clause. The plaintiff says that Oklahoma has existed fifty-six years without a retirement system and "therefore it seems to us that it could have existed ninety more days." However, the very creation of an act itself may necessitate the passage of the emergency clause for the preservation of the public peace, health or safety. In any event, this is for the Legislature to determine.

In the case of Oklahoma City v. Shields, 22 Okl. 265, 100 P. 559, this court said in the body of the opinion:

"* * * We conclude that the judgment of the Legislature in determining whether or not an emergency existed—that is, whether or not a measure is immediately necessary for the preservation of the public peace, health or safety—rests solely with the Legislature. It is not subject to review by the courts, or any other authority except the people. * * *"

We decline to change this rule.

■ It is next asserted that the Retirement Act is a Revenue Act, and since it did not originate in the House of Representatives it is violative of Article 5, Section 33 of the Oklahoma Constitution, which reads as follows:

"All bills for raising revenue shall originate in the House of Representatives. The Senate may propose amendments to revenue bills. No revenue bill shall be passed during the five last days of the session."

We cannot agree. The Act levies no taxes and does not contain any provisions for revenue. In addition thereto, the principal purpose of the Act is to provide a re-

tirement system for public employees and not to raise revenue.

In Leveridge v. Oklahoma Tax Commission, Okl., 294 P.2d 809, we stated:

"'Revenue Bills' are those laws whose principal object is the raising of revenue and which levy taxes in the strict sense of the word, and said phrase does not cover laws under which revenue may incidentally arise."

█ The last contention urged is that the court erred in holding that counties once making a resolution to come under the Oklahoma Public Employees Retirement System could not thereafter withdraw.

The appellate court of the State of New York was confronted with an almost identical situation in the case of New York State Employees Retirement System v. Board of Supervisors of Tioga County, 157 Misc. 87, 283 N.Y.S. 405, 278 N.Y.S. 496, aff'd, 251 App.Div. 198, 296 N.Y.S. 286, 15 N.E.2d 434. The Legislature created a retirement system whereby a county could join the system if the Board of Supervisors of the county adopted a resolution to that effect. The New York Constitution contained a similar restrictive provision as Article 10, Sec. 26 of the Oklahoma Constitution and a similar retirement system but without specifically stating "that such election shall be irrevocable." The Board attempted to withdraw from the system, and a writ of mandamus was issued compelling the Board of Supervisors to make the contribution due from the county to the retirement system. In the body of the opinion of the lower court, the court stated:

"Under Civil Service Law, power of county board of supervisors of Tioga to approve entry of county officers and employees into New York State Retirement System is permissive and when board has legally granted its approval, it has neither power to revoke or rescind approval. * * *"

The Appellate Court affirmed the lower court:

"From an order of the Appellate Division, 251 App.Div. 198, 296 N.Y.S. 286, which affirmed an order granting mandamus, 157 Misc. 87, 283 N.Y.S. 405, on the ground that under Civil Service Law, § 75, the power of the County Board of Supervisors to approve the entry of county officers and employees into the New York State Retirement System was permissive and that when the board had legally granted its approval, it had no power to revoke or rescind the approval. The Board of Supervisors of the County of Tioga appeal.

"Affirmed."

The Oklahoma Retirement Act itself provides that "[u]pon the filing of a certified copy of such resolution with the board, such election shall be irrevocable." The plaintiff stipulated that the Resolution was forwarded and filed in the office of the Oklahoma Public Employees Retirement System. The said Resolution was introduced into evidence by stipulation, and it appears to have met the requirements of the statutes.

The plaintiff appears to take the position that the word "election" as used in the Act refers to the Resolution being submitted to a vote by the electors, and says "it shall not take effect until submitted to a referendum." Such an interpretation and application would render the Act inoperable and would prevent the Resolution from ever becoming irrevocable if no referendum was called. The Act is not ambiguous or indefinite but, on the contrary, clearly and explicitly expresses the intent of the Legislature in making the Act irrevocable once the Resolution of the governing body has been adopted and a certified copy of the same filed with the Board.

We therefore hold that the County of Lincoln, Oklahoma, having adopted a Resolution placing the county in and under the

Oklahoma Public Employees Retirement System and filing a certified copy of such Resolution with the Board, made such an election "irrevocable," and the the action of the plaintiff cannot now be rescinded by the Board of County Commissioners.

Affirmed.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, WILLIAMS, IRWIN, BERRY and LAVENDER, JJ., concur.