** Summary ** CONSTITUTIONAL DEBT LIMITATIONS AS APPLIED TO PENSION LIABILITIES The debt limitation provisions of Okl. Const. Article X, Section 26 are not applicable to the possible liabilities of cities or other political subdivisions to former government employees for deficiencies in pension payments caused by inadequacies in pension funds, because the obligation is imposed by statute. The question of whether a political subdivision will be liable for any such deficiency depends on a construction of the relevant pension statutes in each case. The Legislature has plenary authority to amend and modify pension laws, so long as it does not abrogate vested rights of government employees. The Attorney General has considered your request for an opinion construing Oklahoma constitutional debt limitations as they apply to pension liabilities under government employee pension plans. You have raised the following questions: 1. If it is determined that a particular pension fund is not actuarially sound such that its ultimate liabilities exceed assets, or if a pension fund cannot pay current claims to pensioners, may the pensioners recover any deficiency from the municipality which employed them? Would such an unfunded pension liability against the general credit of the municipality in question violate the debt limitation provisions of Section 26 of Article 10 of the Oklahoma Constitution? 2. If the creation of this unfunded pension liability does not violate the Oklahoma Constitution, then who incurred the liability — "The Legislature when they passed the initial and subsequent legislation without providing proper funding, or the City when they adopted an ordinance creating the pension fund, also without proper funding?" If the unfunded pension liability is a debt of the City, "then how can the Legislature continue to extend the benefit schedules increasing the debt without providing the necessary funding?" Your opinion request does not refer to the terms of any specific pension plan created for the benefit of municipal employees in Oklahoma, and you do not state that any such plan is in fact unable to meet its obligations. For the purposes of your question it will be assumed that the Legislature has enacted statutes authorizing cities to pension city employees by creating a fund from which benefits are to be paid and into which contributions are to be made from current revenues. It will be further assumed that the pension act is silent on the question of whether pensioners may look to the general credit of the city for payment of their pensions in the event of a deficiency in the pension fund. Section Article X, Section 26 of Article 10 of the Oklahoma Constitution provides in pertinent part that: "Except as herein otherwise provided, no county, city, town . . . shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount, including existing indebtedness, in the aggregate exceeding five per centum (5%) of the valuation of the taxable property therein . . . Provided, further, that any county, City, town . . . incurring any indebtedness requiring the assent of the voters as aforesaid, shall, before or at the time of doing so, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within twenty five (25) years from the time of contracting the same . . . " (Emphasis added) Although Article X, Section 26 of Article 10 has been construed in numerous Oklahoma cases, only one Oklahoma decision construing the validity of a pension statute under Section 26 has been found. In Bd. of Commissioners of Lincoln County v. Oklahoma Public Employees Retirement System, Okl., 405 P.2d 68 (1965), statutes creating the Oklahoma Public Employees Retirement System were upheld against attack under Article X, Section 26 of the Oklahoma Constitution. The Board of County Commissioners of Lincoln County had elected to become covered under the Act, and to make appropriate contributions to the fund created in the Act. The Court held that under the Act, Lincoln County could not later elect to withdraw from participation. The County argued that the retirement act would require an appropriation for one fiscal year to be levied for each succeeding fiscal year without authorization by popular vote as required by Section 26, citing cases holding that debts incurred by the city without a popular vote which were not to be paid within a fiscal year were void. The Court disposed of this contention at 405 P.2d 71 as follows: "All of the above cases cited by the appellant deal with instances where the debt incurred being sic voluntary as distinguished from a mandatory obligation imposed by the Legislature. . . . Each of these cases involved a contractual obligation between an individual and a municipality. "As opposed to these cases, we have in the instant case a mandatory obligation imposed by the Legislature where those responsible elected to come under the purview of the legislative enactment. We are concerned with the operation of a public law, not a private contract. This situation is not new in this jurisdiction, and the following cases have been determined by this Court adversely to the contention of the plaintiff in error. Wilson v. City of Hollis, 193 Okl. 241, 142 P.2d 633,150 A.L.R. 1385, and City of Claremore v. Oklahoma Tax Commission, 197 Okl. 223, 169 P.2d 299. "The restrictive effect of this constitutional provision is inoperable where the contractual obligation is imposed upon a political subdivision by a legislative enactment." Significantly, the Court did not choose to uphold the act because the county's contribution to the retirement fund in question could be made entirely from current revenues. See Hanson v. City of Idaho Falls, 92 Idaho 512, 446 P.2d 634
(1968). In the Hanson case, an act creating a policemen's pension fund was upheld against an attack based on Idaho's constitutional debt limitation provisions. The retirement act was held within a proviso that "this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state. " Because all payments to the retirement fund were to be made out of current revenues, the Idaho act was valid. Under this rationale, the Oklahoma Supreme Court could have held the Oklahoma Public Employees Retirement System Act to be valid while at the same time holding that local governmental agencies could not be held liable for unpaid pensions due to deficiencies in the retirement fund. Instead, the Oklahoma Supreme Court in the Lincoln County case quoted with approval the following statement from Wilson v. City of Hollis,193 Okl. 241, 142 P.2d 633, 639 (1943): ". . . This annual obligation is not a contractual obligation within the meaning of Sec. 26, supra, but is an obligation fixed by operation of a legislative act. . . . Once the improvement district is created and the share of the expense chargeable to the municipality is legally fixed, the duty to raise the funds annually is mandatory. Neither the governing officials of the municipality nor any other public official charged with the performance of any duty in levying the municipality's taxes has any discretion to omit to levy to raise this money." Wilson v. City of Hollis was again quoted with approval in Oklahoma Public Employees Retirement System v. Nelson, Okl., 421 P.2d 221
(1966). In that case, the election of Garvin County employees to participate in the retirement system was held irrevocable in spite of erroneous representations made by a retirement system employee that participation in the system as to each individual would be voluntary. The Court stated at 421 P.2d 226 that: "By this we do not mean to imply that a county, after electing to come under the Act, does not have to take further administrative steps, within its own administrative organization, to make funds available as its contribution to the System. This, of course, it would be required to do. . . ." "We are concerned here with an enactment of our Legislature, pro found in nature and sweeping in context, which seeks to provide a fair and reasonable retirement program for employees of the State and counties of Oklahoma. The guidelines for the operation of this act, as set by the Legislature, are definite. Such a retirement program to be workable and actuarially sound, must be of a permanent nature, otherwise, it will fail." Because the statutory schedules of pension benefits payable to pensioners of city and county governments are contractual obligations imposed by the Legislature rather than locally contracted obligations, the prohibition found in Section 26 of Article 10 of the Oklahoma Constitution against the incurring of a debt not to be paid within a fiscal year is not applicable. In addition, it may be argued that as to policemen, firemen, and teachers, pension legislation is specifically authorized by the Oklahoma Constitution as an exception to constitutional debt limitation provisions. Article V, Section 41 of Article 5 of the Oklahoma Constitution provides that: "The Legislature may enact laws authorizing cities to pension meritorious and disabled firemen." Similar provisions as to policemen and teachers are found in Sections Article V, Section 61 and Article V, Section 62 of Article 5 of the Constitution. Although a municipality may be constitutionally held liable for unpaid pensions due to pension fund deficiencies, it is not to be assumed that such liability is inherent. Pension rights of government employees are created and controlled by statute, and those rights may not extend beyond the terms of such statutes. 60 Am. Jur. 2d Pensions and Retirement Funds, 46. Typical of the pension plans affected by your inquiry is the Police Pension and Retirement Act, 11 O.S. 541-541x [11-541-541x] (1971). This plan, like other Oklahoma public employee pension plans, creates a funded or contributory pension system with employee contributions supplemented with employer contributions constituting the pension fund from which benefits are to be paid. Section 11 O.S. 541q [11-541q] of Title 11 specifically provides for proration of payments as follows: "In any case where the funds in any Pension and Retirement System or any city or town are insufficient to make full payment of the amount of pensions or allowances to all persons entitled thereto, then said fund shall be prorated among those entitled thereto, as by the Board of Trustees may be deemed just and equitable." Similar prorata reduction provisions are found in the Firemens Relief and Pension Fund Act at 11 O.S. 380 [11-380] (1971), and in a general city employees retirement system act for cities having a population of over 240,000 at 11 O.S. 1555 [11-1555] (1971). The Oklahoma Public Employees Retirement System Act, upheld in Board of County Commissioners of Lincoln County v. Oklahoma Public Employees Retirement System,405 P.2d 68 (1965), contains no provisions requiring deductions in pension payments due to deficiencies in the pension fund. In municipalities and other political subdivisions whose employees are members of other statutory retirement or pension plans are authorized to consolidate their plans with the public employees retirement system. 74 O.S. 912 [74-912] (1971). The Oklahoma Public Employees Retirement System Act contains detailed provisions requiring continuing actuarial evaluation of the system, together with employer contributions designed to insure continuing actuarial sufficiency of the fund. 74 O.S. 919A [74-919A] — 74 O.S. 920 [74-920]. The rate of employer contribution in each year is to be determined by the actuarial needs of the fund. Section 74 O.S. 920 [74-920] of Title 74 provides as to local governmental agencies that "Each other participating employer shall appropriate and pay to the system a sum sufficient to satisfy the obligation under this act as certified by the Board." There seems little danger of liability of a political subdivision for a deficiency in the state pension fund under this Act. Your second question concerns the power of the Legislature to "continue to extend the benefit schedules increasing the debt" of the city for possible pension fund deficiencies "without providing the necessary funding." Again, you refer to no specific instance or statutory enactment where this has been done. In the absence of such a reference, your question cannot be intelligently answered. The answer would depend on a construction of the enactment in question. The statutes might provide that the local retirement system's board of trustees make an actuarial determination of the rate of employer contribution required to keep the local retirement fund on an actuarial basis, while the statutes in question specifically set out benefit schedules of pensions payable from the fund. If such a statute failed to require adequate employer contribution to the fund, then current employees and pensioners may establish some right to an adequate employer contribution in order to preserve correlative rights in the fund. Oklahoma is committed to the rule that pensions are a part of the compensation of a public employee for services rendered in the past. Statutes creating pension rights are to be liberally construed in order to fulfill the expectations of public employees in regard to this deferred compensation. Board of Trustees of Police Pension and Retirement System of Tulsa v. Kern, Okl., 366 P.2d 415, 418 (1961); Board of Trustees of Firemans Relief and Pension Fund v. Cotton, 196 Okl. 545,167 P.2d 49 (1946); In Re Ross, 201 Okl. 476, 207 P.2d 254
(1949); Annotations, 27 A.L.R. 2d 1442, 52 A.L.R. 2d 437, 474. It has been held that the Legislature has plenary authority to make modifications in pension laws. Robinson v. Police Pension Board for City of Tucson,85 Ariz. 384, 339 P.2d 739 (1959). In cases where actuarial unsoundness of a particular pension fund has been shown, equitable adjustments have been made in order to preserve the expectations of pensioners and employees and to insure continuation of the fund. See Bellus v. City of Eureka,69 Cal.2d 336, 444 P.2d 711 (1968); Hanson v. City of Idaho Falls, 92 Idaho 512, 446 P.2d 634 (1968); Taylor v. Abernathy, 442 Pa. 629, 222 A.2d 863 (1966). Therefore, it is the opinion of the Attorney General that the possible liability of a city or other political subdivision to former employees for deficiencies in a fund from which statutory pension payments are to be made does not contravene the debt limitation provisions of Article X, Section 26 of Article X of the Oklahoma Constitution. The question of whether the city or other political subdivision will be liable for any such deficiency depends on a construction of the pension statutes involved in each case. The Legislature has plenary power to make reasonable changes and modifications in pension laws, so long as it does not abrogate vested rights of government employees who have relied on previous statutory enactments. (C. Larry Pain)