Dear State Superintendent Garrett
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask the following questions:
1. Does the State Department of Education have an obligationto recover a prior year overpayment of state aid from a schooldistrict, once it is verified that an overpayment occurred?
 2. Do the limitations in Article X, Section 26 of the OklahomaConstitution prevent the recovery of a previous overpayment bythe State to a school district?
¶ 1 Article I, Section 5 of the Oklahoma Constitution provides for the establishment and maintenance of a system of public schools within the State:
 Provisions shall be made for the establishment and maintenance of a system of public schools, which shall be open to all the children of the state and free from sectarian control; and said schools shall always be conducted in English: Provided, that nothing herein shall preclude the teaching of other languages in said public schools.
¶ 2 Article XIII, Section 1 of the Constitution places the obligation of establishing and maintaining the system of public schools upon the Legislature:
 The Legislature shall establish and maintain a system of free public schools wherein all the children of the State may be educated.
¶ 3 To carry out this duty, the Legislature has designed a system of funding public elementary and secondary education. The system relies primarily on two sources of revenue — local and state sources.
¶ 4 The largest local sources of revenue for financing public education are the various ad valorem taxes levied on the real and personal property within the school district. Each county must levy a tax of four (4) mills on the dollar valuation of all taxable property in the county for school purposes. Unless a different method is provided for by law, the proceeds of this levy must be apportioned among the county school districts based upon the legal average daily attendance for the preceding school year. See OKLA. CONST. Article X, Section 9(b).
¶ 5 The board of education of a school district may levy an additional tax of fifteen (15) mills on the dollar valuation of all taxable property in the district. With voter approval, a district may also make an emergency levy of up to five (5) mills and a local support levy of up to ten (10) mills.
¶ 6 Additional ad valorem taxes may also be approved by voters for education-related purposes. Article X, Section 10 of the Constitution allows a levy of up to five (5) mills for a building fund, which may be used for erecting or repairing school buildings and for purchasing furniture. Article X, Section 26 permits a school district to incur in any one (1) year an indebtedness in an amount, including existing indebtedness, of up to five per cent (55%) of the valuation of the taxable property of the district for all purposes. If there is an absolute need, a district may increase such indebtedness to ten per cent (10%) for the purpose of acquiring or improving school sites, constructing, repairing, remodeling or equipping buildings, or acquiring school furniture or equipment. The amount of revenue generated by ad valorem taxes varies greatly among the school districts. This is due to differences in property value, upon which ad valorem tax is based, among the districts. The amount of property value within a district also affects the amount of indebtedness which the district may incur.
¶ 7 The second primary source of revenue for public schools is the State. The Legislature has provided for the most important source, state aid, at 70 O.S. 18-101-70 O.S. 18-201.1.
¶ 8 The State Aid Program consists of two parts, foundation program aid and salary incentive aid. The foundation program consists of a certain amount of money per pupil which the Legislature has determined to be necessary to operate a minimum program within a school district. Schools are also eligible to receive salary incentive aid. See 70 O.S. 18-200.1 (1991).
¶ 9 Article 18 of the School Code, 70 O.S. 18-101 (1991), et seq., provides for the present State Aid Program. Section 70O.S. 18-101 contains a declaration of legislative intent. The section provides in pertinent part:
 The Legislature hereby declares that this act is passed for the general improvement of the public schools in the State of Oklahoma; to provide the best possible educational opportunities for every child in Oklahoma; and to have a more beneficial use of public funds expended for education; and this act shall be liberally construed to attain these goals within the purview of the following principles and policies[.]
¶ 10 Article 13, la, of the Oklahoma Constitution provides for the appropriation of funds for the support of public schools and states in part:
 [S]uch monies shall be allocated to the various school districts in the manner and by a distributing agency to be designated by the Legislature; . . . [but] the amount of state funds to which any school district may be entitled shall be determined by the distributing agency upon terms and conditions specified by the Legislature, and provided further that such funds shall be in addition to apportionments from the permanent school fund[.]"
¶ 11 State funds may be distributed as the Legislature sees fit. You have asked whether the State Board of Education is obligated to recover an overpayment of state aid when discovered. In Miller v. Childers, 238 P. 204, 206 (Okla. 1924), the Oklahoma Supreme Court held that under Section 1 of Article XIII of the Constitution the "duty rests primarily upon the state Legislature to `establish and maintain a system of free public schools wherein all the children of the state may be educated'." The Court further recognized that the Legislature may, when not otherwise limited, "choose its own agencies and methods for this work." Id. The Legislature has created the State Board of Education and vested it with supervision of the public school system of Oklahoma. Included within the supervision is administration of state funds. At 70 O.S. 3-104 (1998), the State Department of Education is not only vested with power to supervise the public school system, but is also empowered to adopt policies and make rules for the public school system:
 The control of the State Department of Education and the supervision of the public school system of Oklahoma shall be vested in the State Board of Education and, subject to limitations otherwise provided by law, the State Board of Education shall:
 1. Establish and prescribe the duties of an executive officer who shall be the State Superintendent of Public Instruction and whose duties shall include the responsibility to give advice and make recommendations to the Board on all matters pertaining to the policies and administration of the State Department of Education and the public school system;
 2. Adopt policies and make rules for the operation of the State Department of Education and the public school system of the state.
¶ 12 As part of its obligation to educate the children of the State of Oklahoma the Legislature has adopted the present school funding system. The Legislature has also provided for audits of state monies received by public school districts. Specifically,70 O.S. 18-118 (1991) provides in pertinent part:
 A. The State Board of Education shall appoint auditors who shall audit the funds of the public school districts and the use made of the monies thereof, and shall make such other audits as may be required by the State Board of Education.
. . . .
 C. If audits disclose that state monies have been illegally apportioned to, or illegally disbursed or expended by, a school district or any of its officers or employees, the State Board of Education shall make demand that said monies be returned to the State Treasurer by such school district. If said monies are not returned, the State Board shall withhold the unreturned amount from subsequent allocations of state funds otherwise due the district. The State Board of Education shall cause suit to be instituted to recover for the state any monies illegally disbursed or expended, if not otherwise recovered as provided herein.
¶ 13 70 O.S. 18-118 places on the State Board of Education an affirmative duty to recover monies which have been illegally apportioned to a school district. Therefore, in answer to your first question, the State Department of Education does have an obligation to recover a prior year overpayment of state aid once it is verified that an overpayment has occurred.
¶ 14 Your second question asks whether Article X, Section 26 of the Oklahoma Constitution prohibits the State Department of Education from recouping an overpayment of state aid. Section 26 is theoretically implicated when the Department is attempting to recoup monies paid to a school district in a prior fiscal year where the recoupment has not been approved by the voters. Section 26 provides in part:
 (a) Except as herein otherwise provided no county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose[.]
¶ 15 In City of Del City v. Fraternal Order of Police,869 P.2d 309, 311 (Okla. 1993), the Supreme Court stated:
 The purpose behind this constitutional provision is to force cities and municipalities to operate on a cash basis, and to prevent indebtedness extending beyond one year. Independent School District No. I v. Howard, 336 P.2d 1097 (Okla. 1959); Town of Red Fork v. Gantt-Baker Co., 266 P. 444, 447 (Okla. 1928). This section restricts the power of a city to incur indebtedness payable out of tax revenues beyond the year. Fairbanks, Morse, and Co. v. City of Wagoner, 81 F.2d 209 (10th Cir. 1936). It serves not only as a restriction on the city but also the legislature; the legislature cannot relieve the city of the burden of following the mandate of Section 26.
¶ 16 An indebtedness is created when an entity "Borrows money to be paid, with interest, from taxes in the future, whether such taxes are formally levied at one time, covering that future, or yearly, to meet the payments when about to mature." City ofLawton v. Morford, 293 P. 1068, 1071 (Okla. 1930).
¶ 17 Although recoupment by the State Department of Education may be a debt in one sense, it is not a debt as contemplated by Section 26 of Article X. The statutory collection method does not obligate the taxpayers of the school district. The recoupment is accomplished by means of state aid reductions in future years. The taxpayers of a district are not required or obligated to use locally assessed tax monies to satisfy the recoupment. In Boardof County Commissioners v. Oklahoma Public Employees RetirementSystem, 405 P.2d 68 (Okla. 1965), the Oklahoma Supreme Court was asked to review a situation where the Legislature provided for the establishment of a retirement system for state and county employees. The Act provided that each county in the state was an eligible employer for purposes of the retirement system. After initially resolving to join the system, the County Commissioners notified the Executive Secretary of the retirement system of their decision not to participate. The Commissioners' application to withdraw was denied and subsequent thereto the county filed its petition for review of the system's action. The county argued that the funds necessary to carry out the action of the Board of Commissioners would require an appropriation for one (1) fiscal year to be levied for each succeeding fiscal year without authorization by popular vote as provided by Article X, Section 26. The Court, after discussing cases dealing with instances where debt was incurred by voluntary as distinguished from mandatory obligations imposed by the Legislature, held that the restrictive effect of Article X, Section 26 is inoperable when the contractual obligation is imposed upon a political subdivision by legislative enactment. The following quote appears at page 72:
 [W]e have in the instant case a mandatory obligation imposed by the Legislature where those responsible elected to come under the purview of the legislative enactment. We are concerned with the operation of a public law, not a private contract. This situation is not new in this jurisdiction, and the following cases have been determined by this court adversely to the contention of the plaintiff in error. Wilson v. City of Hollis, 193 Okl., 241, 142 P.2d 633, 150 A.L.R. 1385, and city of Claremore v. Oklahoma Tax Commission, 197 Okl., 223, 169 P.2d 299. . . .
 In City of Claremore v. Oklahoma Tax Commission, supra, we stated that if the debt is an obligation imposed upon the city by an Act of the Legislature the contractual obligation is not violative of Section 26, Article 10 of the Constitution.
¶ 18 The exception for legislatively-imposed obligations to Section 26 was created in Smartt v. Board of CountyCommissioners, 169 P. 1101 (Okla. 1917). As pointed out by the Oklahoma Supreme Court in City of Del City v. Fraternal Order ofPolice,869 P.2d 309 (Okla. 1993), the decisions after Smartt
fall into two categories: "(1) those obligations imposed upon the municipality by either the Federal or Oklahoma Constitution, and (2) those obligations which are mandated not by the Constitution, but are imposed either by the Legislature or by a voluntary contract entered into between the parties." Id. at 315. The Court observed that those obligations which fall under the first category are not limited or prohibited by Section 26. Those which fall under the second category are controlled by Section 26 and are thus unconstitutional. The following quote appears at page 318:
 In Lincoln County and Mullins, this Court said the legislature may require a municipality to comply with a legislative act and thereby create a valid liability on the part of the municipality. But we believe a county or municipality must fund all of its obligations, except those of a constitutional governmental nature, by conforming to the constitutional requirements of Section 26.
¶ 19 The Court has struggled with the parameters of the prohibitions found in Article X, Section 26 as it relates to legislatively created obligations and has narrowly construed theSmartt exception. However, for Section 26 to be applicable there must be an obligation on the part of the taxpayers to use a current year's revenue to satisfy a prior year's obligation. The recoupment statute found in 70 O.S. 18-118 (1991), does not require any tax levy by the district which improperly received funds. It requires the State Department of Education to recoup improperly paid state money through a reduction of future state aid. Rather than mandate that the recipient district return the money from its tax collections, the Legislature has devised a system whereby the State Department of Education reduces future funding to the district. This is not the type of "obligation" covered by the provisions of Article X, Section 26 of the Oklahoma Constitution.
¶ 20 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The State Department of Education has an obligation torecover a prior year overpayment of state aid once it is verifiedthat an overpayment has occurred.
 2. The recoupment statute found at 70 O.S. 18-118 (1991)does not require any tax levy by a local school district tosatisfy a prior year's obligation and is therefore not the typeof obligation covered by the provisions of Article X, Section 26of the Oklahoma Constitution such as to prevent the recovery of aprevious year's overpayment by the State Department ofEducation.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
DOUGLAS F. PRICE ASSISTANT ATTORNEY GENERAL