In the Matter of the Application of NEW YORK STATE EMPLOYEES' RETIREMENT SYSTEM and MORRIS S. TREMAINE, Comptroller of the State of New York, Administrative Head of the New York State Employees' Retirement System, Respondents, for a Peremptory Order of Mandamus against THE BOARD OF SUPERVISORS OF THE COUNTY OF TIOGA, Appellant.*

Third Department, May 12, 1937.

*Affg. 157 Misc. 87.

*Stephen M. Lounsberry [A. W. Feinberg* of counsel], for the appellant.

*John J. Bennett, Jr., Attorney-General [Hugh Reilly, Assistant Attorney-General,* and *John F. Tucker, Assistant Attorney-General,* of counsel], for the respondents.

PER CURIAM. This is an appeal from a peremptory order of mandamus. The board of supervisors of the county of Tioga adopted a resolution on December 15, 1930, approving the inclusion of its officers and employees in the State Retirement System which fully complied with section 75 of article 5 of the Civil Service Law of the State.

In pursuance of the resolution making the officers and employees a part of the Retirement System some forty-eight employees became members and thereafter and on March 2, 1931, the board of supervisors adopted a resolution rescinding the resolution of inclusion. This was done on the ground that the information given to the board of supervisors before the adoption by a representative of the Comptroller's office, while innocently given, was erroneous and that they were induced by such erroneous statements to adopt the resolution in the first instance.

The power conferred by section 75 of the Civil Service Law upon the board of supervisors to approve of the entry of county officers and employees into the New York State Retirement System is permissive and when the board has legally granted its approval it has not the power to either revoke or rescind the same and the peremptory order of mandamus should be affirmed, with costs.

MCNAMEE, CRAPSER and BLISS, JJ., concur; HILL, P. J., dissents, with an opinion, in which HEFFERNAN, J., concurs.

HILL, P. J. (dissenting). The board of supervisors of Tioga county has appealed from a peremptory order of mandamus which directs it to include in the county budget and to raise by taxation and pay to the Comptroller the amounts which he has certified under section 78 of the Civil Service Law as contributions which the county is required to make " on account of its approval of the

participation of its officers and employees in the State Employees' Retirement System." The order involves two certificates made by the Comptroller, one dated December 14, 1932, for $5,110.69, the other dated January 15, 1934, for $4,853.63, and thereunder the budget is to include interest on the respective amounts at six per cent from the dates of the certificates. Payment is resisted upon the ground that while on December 15, 1930, the board approved the inclusion of the " officers and employees of the county of Tioga in the New York State Employees' Retirement System," on March 2, 1931, by resolution it rescinded the previous resolution and withdrew its approval, and, therefore, that the employees of the county are not members of the State Retirement System with the approval of the board of supervisors (Civil Service Law, § 75), and that the county is not liable to make contributions as prescribed in the law (§ 78, *supra*). The theory of the Attorney-General, which was adopted by the court below, is that the Civil Service Law (§ 75) by its terms permits the board of supervisors to approve the inclusion of the county employees as members of the State Retirement System, but not to rescind its approval and, therefore, that the second resolution was " void and of no effect."

The statements contained in affidavits presented in opposition to an application for an order of mandamus are to be regarded as true; therefore, on this record it is admitted that a representative from the Comptroller's office at a meeting of the board held previous to December 15, 1930, unintentionally misstated the facts concerning the amount of money which the county would be required to contribute and that the original resolution was adopted under a belief that the misstatements were true.

A board of supervisors represents the county in its corporate capacity and may act within the scope of powers granted by statute. It may exercise such incidental powers not expressly enumerated or mentioned in the statute as will permit it to deal reasonably and properly with the subject under consideration. (*Woods* v. *Supervisors, etc.*, 136 N. Y. 403.) In addition, the board of supervisors has inherited and may exercise certain inherent powers and prerogatives. " The habit of local self-government is something which we took over, or rather, continued from the English system of government * * *. We must not forget that a Constitution is the measure of the rights delegated by the people to their governmental agents and not of the rights of the people." (*Rathbone* v. *Wirth*, 150 N. Y. 459, 467, 470.) In measuring the power granted by the Legislature to a local legislative body, a statute should be studied " having in mind this principle of local self-government, as an inherited and pronounced feature in the general governmental system." (*Rathbone* v. *Wirth, supra*, p. 471.)

A resolution adopted by the common council of a city may be rescinded at any time before the rights of third parties have become vested thereunder. (*Ashton* v. *City of Rochester*, 133 N. Y. 187; *People ex rel. N. Y., W. & B. R. Co.* v. *Waldorf*, 168 App. Div. 473.) A resolution adopted by the board of trustees of a village likewise may be rescinded. (*Matter of Eiss* v. *Summers*, 205 App. Div. 691; *Harrison* v. *Village of New Brighton*, 110 id. 267.) The fact that the statute is silent on the subject of reconsideration and rescission is not to be construed as forbidding it. Hasty or ill-advised action may be corrected by a legislative body when the mistake has been discovered, in the event no vested interest is affected thereby. (*Matter of Eiss* v. *Summers, supra,* p. 695.) The opinion in *People ex rel. N. Y., W. & B. R. Co.* v. *Waldorf* (*supra*) cites Dillon on Municipal Corporations and quotes therefrom with approval: " At any time before the rights of third persons have vested, a council or other corporate body may, if consistent with its charter and rules of action, rescind previous votes and orders " (p. 475).

The " New York State Employees' Retirement System " was created in 1920 (Chap. 741) and it was enacted that it should " have the powers and privileges of a corporation." (Civil Service Law, § 51.) While not mentioned, correlative corporate obligations and duties are doubtless implicit in the statute. Membership was limited to State employees. The scheme involved the retention of a percentage of the salaries of members, to which the State added a contribution, and from this fund pensions, annuities and death benefits were to be paid. Under an amendment adopted in 1922 (Chap. 591) the membership was extended to include municipal employees, " provided that the officers and employees of any county shall not be included in the State Employees' Retirement System without the approval of the board of supervisors of any such county " (§ 75). Similar approval by " the local legislative body " was required as to city, town and village employees. The amendment provided as to the source and amount of public moneys to be paid into the fund, " the amounts which would be payable by the State on account of such county, city, town or village employees, if they were State employees, including a *pro rata* share of the cost of the administration of the retirement system, based upon the payroll of the employees of the county, city, town or village shall be a charge against the county, city, town or village " (§ 78). The amount of the annual payment to a retired employee is determined quite largely by the length of his public service, which may have begun prior to his membership, or to the foundation of the system. The amount necessary to be contributed

to make the fund solvent for such factor is designated a " deficiency contribution." As to this it is enacted that the municipality is required to "make a special deficiency contribution on account of its approval of the participation of its officers and employees * * * which shall be determined by an actuarial valuation of the accrued liability on account of the officers and employees of such county * * * in the same manner as the deficiency rate was originally determined for State employees." To these two items paid by the county is to be added the deduction from the salaries of the members and from the aggregate the payments are made for pensions, annuities, death benefits and the like to county employees the same as to State employees under the State system. The State makes no contribution to the fund, but does extend its good offices in connection with making actuarial computations, the management and investment of the fund and the payment of benefits. For this the State is paid (§ 78). The only interest which the State has in the transaction is that of an employee, trustee and a bailee for hire. (*New York City Employees' Retirement System* v. *Eliot*, 267 N. Y. 193, 200.) The real parties in interest are the county on the one hand and its employees on the other. By the resolution of December fifteenth the county employed the State for the purposes mentioned and established the above-described relations with its employees. It is asserted on behalf of the State Comptroller that this was and is an irrevocable commitment by the county to pay benefits to or on account of its employees as fixed in the statute; thus that the March second rescinding resolution was a nullity.

Difficulty has been experienced in classifying the relation between the municipality bestowing the pension and its employees. (*Roddy* v. *Valentine*, 268 N. Y. 228, 231; 40 Harvard L. Rev. 504.) A board of supervisors may not make gratuitous gifts or grants from county funds, or " grant any extra compensation to any public officer, servant, agent or contractor." (State Const. art. 3, § 28.) A pension for past services is a gratuity and may be revoked at any time. (*United States* v. *Teller*, 107 U. S. 64.) The theory under which annuities and pensions given civil employees have been approved is that it might be, or might be thought to " be wise to provide a system of pensions as an inducement both to service at low wages and also to good conduct in service." (*Matter of Mahon* v. *Board of Education*, 171 N. Y. 263, 267.) Therefore, the pension and annuity partakes of the nature of added compensation or an increase of salary and is permitted by the County Law (§ 12, subd. 5). However, it has been determined that where the fund is made up in part of public moneys, no contractual

relation by the county to pay a pension to the member employee arises until all precedent conditions have been met, that is, until after the retirement and the payment of the annuity or pension has begun. (*Pennie* v. *Reis*, 132 U. S. 464; *Cohrn* v. *Henderson*, 19 Cal. App. 89; 124 P. 1037.) Prior to that time the relation between the municipality and the employee has been classified as " quasi-contractual." (*Roddy* v. *Valentine, supra;* 40 Harvard L. Rev. *supra.*) The Supreme Court of the United States, speaking of a fund made up in part of deductions from policemen's salaries and in part from public funds, has said, " it was entirely at the disposal of the government, until, by the happening of one of the events stated — the resignation, dismissal, or death of the officer — the right to the specific sum promised became vested in the officer or his representative. * * * There was no contract on the part of the State that its disposition should always continue as originally provided. Until the particular event should happen upon which the money or a part of it was to be paid, there was no vested right in the officer to such payment. His interest in the fund was, until then, a mere expectancy created by the law, and liable to be revoked or destroyed by the same authority." (*Pennie* v. *Reis, supra*, p. 471.)

In *People ex rel. Devery* v. *Coler* (173 N. Y. 103) the relator had been chief of police in New York city. The statute creating the office provided that the incumbent would be entitled to an annual pension at the expiration of twenty-five years' service, and that " pensions granted under this section shall be for the natural life of the pensioner and shall not be revoked, repealed or diminished." The statute was repealed, the office abolished, and the duties transferred to the police commissioner. It was determined that relator had no vested right to the pension and if entitled to any relief, it could be obtained in an action.

It is suggested by the Attorney-General, but without supporting authority, that the resolution of December fifteenth was not a legislative act, that the board acted judicially and, therefore, could not sit in review of its earlier determination. The appropriation and disbursing of public funds to pay salaries of employees and for like purposes is a legislative act. This will appear from the authorities earlier cited. The very statute under which the resolution of approval was passed defines the act as legislative. " That the officers and employees of any city shall not be included in the State employees' retirement system without the approval of the local legislative body." The State does not incur an obligation to pay pensions, annuities or death benefits to county employees until contributions have been made by the county (§ 79). The

resolution of December fifteenth did not give to the State or its employees a vested right to compute actuarially, handle, invest or distribute the funds of Tioga county. No funds belonging to the county have been transferred to the Comptroller. The county treasurer made the first transfer of the amounts contributed by the employees and officers more than two months after the rescinding resolution had been adopted. The resolution of March 2, 1931, was adopted before the rights of the employees had vested. Its effect was to withdraw and cancel the approval earlier granted.

The order of peremptory mandamus should be reversed on the law, with fifty dollars costs and disbursements, and the petition therefor dismissed, with fifty dollars costs.

HEFFERNAN, J., concurs.

Order affirmed, with fifty dollars costs and disbursements.