In the Matter of County of Cayuga, Petitioner, against Thomas J. McHugh et al., Constituting the State Commission of Correction, Respondents.

Fourth Department, March 20, 1957.

*Paul M. O'Connor,* County Attorney, for petitioner.

*Louis J. Lefkowitz,* Attorney-General (*John R. Davison* and *James O. Moore, Jr.,* of counsel), for respondents.

WILLIAMS, J.  The County of Cayuga commenced this article 78 proceeding to review a determination of the State Correction Commission closing the Cayuga County jail.  Pursuant to section 1296 of the Civil Practice Act, the proceeding was transferred to this court.

Subdivision 8 of section 46 of the Correction Law empowers the Correction Commission to " Close any county jail   *   *   * which is unsafe, unsanitary or inadequate to provide for the separation and classification of prisoners required by law.  The powers and duties of the commission under this subdivision shall be exercised in the following manner: The commission shall cause a citation to be mailed to the sheriff and clerk of the board of supervisors   *   *   *   at least twenty days before the return day thereof, directing the authorities of the county   *   *   *   to appear before such commission at the time and place set forth in the citation, and show cause why such county jail   *   *   *   shall not be closed.  After a hearing thereon or upon the failure to appear, such commission is empowered to order the county jail   *   *   *   designated in the citation closed within ninety days, during which time the county   *   *   *   may review such order in the manner provided in article seventy-eight of the civil practice act, in the supreme court."

Preliminary to the invocation of those powers, the Correction Commission caused an investigation to be made of the jail on March 25 and 29, 1955.  That inspection resulted in the preparation of two documents which are notable for their differences.  The first is an undated report submitted by the secretary and the senior inspector of the commission.  The second is a memorandum, dated April 6, and prepared by the same gentlemen.  In those two documents there is a basic difference of approach which is important to this case.  The first report emphasized the lack of cleanliness and sanitation in the jail, and concluded with a recommendation that a citation issue in accordance with

the statute. We find nothing in that report which would necessarily require the construction of a new jail or even major structural alterations in the existing one. Minor repairs and better maintenance could have met every objection in the report, for most of the conditions complained of could occur in any jail, new or old. When we turn to the memorandum of April 6, however, the picture changes, for that document contained a serious indictment of the structural adequacy of the jail building itself. The memorandum did not merely contain additional evidence or data in support of the criticisms contained in the report; rather, it presented additional charges which, if true, might reasonably be thought to require the construction of an entirely new jail.

On April 20, 1955, the Correction Commission mailed to the County Sheriff a citation which recited the commission's opinion that the jail was unsafe, unsanitary, and inadequate, and required the county to show cause why it should not be closed. At the same time, a copy of the inspection report was mailed to the Sheriff, who was advised that the commission had approved it. But no copy of the memorandum of April 6 was supplied to the county at that time.

On May 25, the return day of the citation, a copy of the memorandum was before each commissioner. Before the Cayuga County delegation was invited into the meeting, the commission's senior inspector stated that "we did not put in our inspection report the data we have here in our Special Report [the memorandum of April 6]. We felt it should be kept within the Commission until the delegation got there. The Sheriff or the members of the Board [of Supervisors] have no knowledge of the contents." Various representatives of the county were then invited into the meeting, and a brief prepared by the County Attorney was read. In that brief he considered the various points which had been raised in the first inspection report and concluded that the conditions complained of could exist in a new jail; that it was all a matter of maintenance — "a matter of soap, water, paint, and closer supervision of the prisoners and the jail property" — and he estimated that $5,000 or $10,000 would place the jail in good condition. At no time during the discussion was the memorandum of April 6 presented in evidence. The county was not supplied with a copy or even informed of its existence. Thus, the memorandum, which, as the senior inspector stated "should be kept within the Commission until the delegation got there", was kept within the commission during the hearing as well. Why it should have

been guarded with such deliberate secrecy at that time, we cannot imagine.

On the day of the hearing, the Correction Commission ordered the jail closed on the grounds that it was " unsafe, unsanitary and inadequate to properly provide for the separation and classification of prisoners as required by law." Two days later, a copy of the closing order was mailed to the county together with " copies of a Memorandum dated April 6, 1955, as prepared by the staff of this office, such memorandum setting forth detailed information concerning the present condition of the jail ". So far as the record discloses, the county first learned of the existence of the memorandum upon receipt of the letter of May 27 — two days after the holding of the hearing and the making of the closing order.

The Court of Appeals has recently written: " The hearing held by an administrative tribunal acting in a judicial or quasi-judicial capacity may be more or less informal. Technical legal rules of evidence and procedure may be disregarded. Nevertheless, no essential element of a fair trial can be dispensed with unless waived. That means, among other things, that the party whose rights are being determined must be fully apprised of the claims of the opposing party and of the evidence to be considered, and must be given the opportunity to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal " (*Matter of Hecht* v. *Monaghan,* 307 N. Y. 461, 470). Although we agree that some informality is permitted, the present record reveals how far an administrative agency, even when acting in a quasi-judicial capacity, might depart from the standards routinely insisted upon in a hearing in a court of law, unless some judicial restraint may be exercised. This court can review the fairness of the procedure adopted (Civ. Prac. Act, § 1296, subds. 4, 5).

The hearing required by subdivision 8 of section 46 of the Correction Law is undoubtedly designed to afford the parties an opportunity to advance their respective claims, to present evidence in support thereof, and to controvert the claims and evidence of the opposing party. If such an opportunity is not granted, then the hearing is illusory and sham, a hearing in name only, and the mandate of the statute is unsatisfied. We do not believe that the County of Cayuga received the hearing required by law, for it never had an opportunity to dispute or refute the matters contained in the secret memorandum of April 6, upon the basis of which the closing order was obviously rendered. Rather the county was misled into answering the

quite distinct charges contained in the inspection report. We cannot speculate how petitioner would have met the allegations of the secret memorandum. It is enough that, by the procedure adopted, an opportunity to do so was withheld (cf. *Coe* v. *Armour Fertilizer Works*, 237 U. S. 413, 424).

*Matter of Newbrand* v. *City of Yonkers* (288 N. Y. 164, 179) was an article 78 proceeding to review a determination of a police pension board. Upon the hearing the board had received an affidavit from a police surgeon, but the claimant was never so advised. The determination was therefore annulled, the court stating that "the claimant should have been informed that the trustees received and acted upon the affidavit of the surgeon and should have been given opportunity to object to its reception or to controvert the allegations contained therein."

In *Matter of Heaney* v. *McGoldrick* (286 N. Y. 38, 45), a unanimous court, per LEHMAN, Ch. J., stated: "Information gathered by investigators and reported to the Comptroller may properly form the basis of the Comptroller's determination, but the petitioner should be apprised of the facts disclosed upon such investigation and granted an opportunity to test by cross-examination the basis of the conclusions contained in the memorandum or report and to offer evidence which might affect the validity of those conclusions. [Citations]. Without such opportunity the notice required by the statute would serve little purpose. Here the petitioner received no statement of the facts disclosed by the investigation and no opportunity to controvert its conclusions before the determination of the Comptroller based upon those conclusions was made and filed." The determination was, accordingly, annulled.

In *Matter of New York Water Service Corp.* v. *Water Power & Control Comm.* (283 N. Y. 23, 31) we read: "The Commission may with entire propriety give heed to the views which its executive engineer may express as to the merits of the respondent's present application. In this instance, however, without supporting findings of fact, the Commission has adopted, as decisive of respondent's application (No. 1286), the views of its executive engineer without affording the respondent an opportunity either to test by cross-examination the basis of the executive engineer's conclusions or to offer evidence material to those conclusions. In justice to the rights of the respondent upon its present application we believe it should be accorded such an opportunity."

The determination should be annulled and the matter remitted to the State Commission of Correction for a hearing in accordance with the statute.

KIMBALL, J. (dissenting). It is my opinion that the Commission of Correction, in carrying out the provisions of subdivision 8 of section 46 of the Correction Law, was acting in an administrative capacity. By section 5 of article XVII of the New York State Constitution, the Legislature is charged with the maintenance and support of institutions for the detention of persons charged with or convicted of crimes. A county jail is such an institution and the Legislature has provided that each county shall maintain one. (County Law, § 217.) A county is merely a subdivision of the State itself. It can exercise no powers except those conferred upon it by the Legislature. "A county is a municipal corporation comprising the inhabitants within its boundaries and formed for the purpose of exercising such powers and discharging such duties of local government and administration of public affairs as may be imposed or conferred upon it by law." (County Law, § 3.) The only right of a county to maintain a county jail for the detention of its prisoners derives from the Legislature. I think no one would question the authority of the Legislature to abolish county jails and require the several counties to maintain and support their prisoners in some other institution fixed by law. No consent or approval of a county would be required. What the Legislature, in this relation, has authorized, the Legislature may revoke.

In carrying out the constitutional mandate to maintain and support penal institutions, the Legislature has set up the Department of Correction as a part of the State Government. It thereby delegated to an administrative body the duties laid upon it by the Constitution. It gave the commission the power and placed upon it the duty to close a county jail "which is unsafe, unsanitary or inadequate to provide for the separation and classification of prisoners required by law." (Correction Law, § 46, subd. 8.) Again, it can hardily be questioned that the Legislature could have provided for such closing without any notice whatever to a county, had it so desired. As a subdivision of the State, possessed of no powers except those given by the Legislature, the county could not complain. In deference, however, to the local authorities, the Legislature saw fit to provide a procedure by which the commission's power to close should be exercised (§ 46, subd. 8). The record in this case shows that the procedure so provided was meticulously followed by the commission. A citation was duly served directing the county officials to appear before the commission at a designated time and place to show cause why the jail should not be closed. The county officials duly appeared as directed and were

afforded a hearing. They filed a brief and made such statements to the commission as they desired. The statute was fully complied with. There is no requirement that any charges, specifications or reports be served upon the county officials. There is nothing in the statute to the effect that there is any burden upon the commission to sustain charges against the county. It is within the discretion of the commission to close the jail, as an administrative act, upon compliance with the procedure laid down. The purpose of serving notice by way of citation to show cause is to give an opportunity to the officials to be heard so that they may bring forward for the consideration of the commission such explanations, recommendations and future plans as they see fit. The "hearing", however, is not of a quasi-judicial nature. To close or not to close is purely an administrative matter delegated to the commission by the Legislature pursuant to the constitutional mandate. Provided the statute (§ 46, subd. 8) is complied with and provided the commission did not act unreasonably, arbitrarily or capriciously, the court may not interfere with the determination. Due process or the substantial evidence rule are not in this case. There are no personal or property rights involved and cases relating to revocation of licenses and the like are inapposite. Here the State, through its commission, is simply taking back control of a county jail as it has the right to do. (*Gardner* v. *Ginther*, 232 App. Div. 296, affd. 257 N. Y. 578; *Matter of McAneny* v. *Board of Estimate*, 232 N. Y. 377; *People ex rel. Simon* v. *Bradley*, 207 N. Y. 592; *Matter of New York State Employees' Retirement System* v. *Board of Supervisors*, 157 Misc. 87, affd. 251 App. Div. 198, affd. 278 N. Y. 496.) In the *McAneny* case (*supra*) the court in citing *People ex rel. Simon* v. *Bradley* (*supra*, p. 390) said: "The decision was placed upon the ground that the state, in its sovereign capacity, might, subject to constitutional limitations, resume powers delegated to localities and either by itself or through an agent, directly control matters of local government."

The determination of the Commission of Correction should be confirmed and the order affirmed.

All concur, except KIMBALL, J., who dissents and votes to confirm the determination in a separate opinion. Present — McCURN, P. J., VAUGHAN, KIMBALL, WILLIAMS and BASTOW, JJ.

Determination annulled, without costs, and matter remitted to the State Commission of Correction for further proceedings in accordance with the opinion.