OKLAHOMA PUBLIC EMPLOYEES RE-
TIREMENT SYSTEM ex rel. Charles NES-
BITT, Attorney General of Oklahoma, and
Andy McNiece, County Treasurer of Garvin
County et al., Plaintiffs in Error,

v.

Charles NELSON et al., Defendants in Error.

No. 41912.

Supreme Court of Oklahoma.

Sept. 27, 1966.

Charles Nesbitt, Atty. Gen., State of Oklahoma, and Robert N. Naifeh, Asst. Atty. Gen., State of Oklahoma, Oklahoma City, for plaintiffs in error.

Haskell Paul, Pauls Valley, for defendants in error.

HALLEY, Chief Justice.

This is an appeal from the District Court of Garvin County, Oklahoma, involving a judgment of that court holding that Garvin County, Oklahoma, could withdraw from participation in the Oklahoma Public Employees Retirement System Act. Plaintiffs, in the action below, were some eighty county officials and/or employees of Garvin County. The defendants were the County Treasurer, County Clerk and the Board of County Commissioners of Garvin County. The Attorney General of the State of Oklahoma, by appropriate motion and order, was permitted to intervene in the case on behalf of the State of Oklahoma and the Board of Trustees of the Oklahoma Public Employees Retirement System. The parties will be referred to as they appeared below.

The action, as filed below, was in the form of mandamus, seeking the repayment to plaintiffs of certain sums of money, allegedly withheld from the salaries of plaintiffs without authority, by the defendants, and to prohibit any further withholding.

The Oklahoma Public Employees Retirement System Act, 74 O.S.Supp.1963, Sections 901–928, became effective in June, 1963. The intent of the Act was to provide for the establishment of a retirement system for state and county employees. The Act provided that each county in the state and the State of Oklahoma was an "eligible employer". This appeal relates only to the right, if any, of a county to withdraw from participation in the plan, after it has once joined the plan.

The facts, as shown by the pleadings and the evidence, partly stipulated to, resulting in this controversy, are as follows: On October 3, 1963, the defendant Board of County Commissioners of Garvin County, received a letter, designated herein, as a letter of advice, under the signature of the Executive Secretary of the Oklahoma Public Employees System, in his official capacity, encouraging the defendant Board of Commissioners to hasten action to comply with the provisions of the Act. The letter urged the passage of a resolution by the Board of Commissioners electing to bring Garvin County within the Act. That this should be done by October 15, 1963, so that the Garvin County officials and employees could come under the Act as of January 1, 1964. The letter also set out that participation in the retirement plan, after the passage of the resolution, would

be optional, as to all elected or appointive county employees.

The defendant Board of County Commissioners, did, on October 14, 1963, pass such a resolution, electing to bring Garvin County within the terms of the Act. It is undisputed that this resolution, so enacted, was duly published in accordance with Section 910(1) of the Act, and a certified copy thereof was properly filed with the Board of Trustees of the Oklahoma Public Employees Retirement System prior to January 1, 1964. There was no petition filed within the sixty days of the final publication demanding voter approval of the resolution.

The evidence further showed, that some time between October 14, 1963 and the first of January, 1964, it was brought to the attention of the defendant Board of County Commissioners, by press releases, that the Executive Secretary of the Oklahoma Public Employees System was taking the position that participation on the part of all county officials and employees, under the Act, was mandatory. That the Board of Commissioners called a meeting of the county employees and it was the consensus of their opinion that they did not desire to participate in the plan if it was not optional. Thereupon, the defendant Board of Commissioners, did, on January 20, 1964, enact another resolution, nullifying and setting aside their resolution of October 14, 1963, setting out in their last resolution that they had been misled by the officials in charge of the Oklahoma Public Employees Retirement System about the facts of the System, and the resolution further provided that no monies would be held from or paid by any employee of Garvin County for the purpose of participating in said Retirement System.

It was further shown, that on December 29, 1964, the County Clerk of Garvin County, one of the defendants herein, received another letter from the Executive Secretary of the Oklahoma Employees System advising that his letter of October 3, 1963, was in error, with respect to any options to participate in the plan being available to county officials or employees.

It was further shown by the evidence that payroll deductions were made from the salaries of the plaintiffs herein, beginning as of January 1, 1964, and that these deductions were still being made as of the time of the filing of this suit. It was also shown that these monies were not matched by county funds, and that each month, from January 1, 1964, the Board of Trustees of the Retirement System had filed a claim with the defendant Board of County Commissioners seeking payment of the monies so withheld, but that its claims were disallowed by the defendant County Commissioners.

There was a conflict in the evidence as to whether or not the defendant Board of Commissioners or the County Attorney of Garvin County received copies of the Act from the office of the Executive Secretary of the Retirement System prior to October 3, 1963, but it was clearly shown that the defendant Board of Commissioners did have in their office, prior to October 3, 1963, a copy of the 1963 Session Laws, which had in it a copy of the Act in question. It was also shown that the defendant Board of County Commissioners enacted the resolution of October 14, 1963 and the resolution of January 20, 1964, without consultation with the County Attorney of Garvin County, and it was their evidence that their passage of the resolution of October 14, 1963, electing to bring Garvin County within the Act, was based solely upon the letter of October 3, 1963 from the Executive Secretary of the Retirement System. The County Clerk of Garvin County testified that she was holding the monies withheld on the advice of the County Attorney of Garvin County, and that in effect, she was just a stakeholder in the matter.

The trial court, in his findings of fact and conclusions of law, took notice of our recent opinion in the case of Board of Co. Com'rs v. Oklahoma Pub. Emp. Retire. Sys., Okl., 405 P.2d 68, but held, in effect, that a different legal issue was raised in the

case at hand, to-wit: the effect of the construction of a law by the administrative agency charged with the duty of carrying out said law, and the reliance upon such construction by an inferior administrative board or agency. The trial court held that good faith, justice and equity would require that once the Board of Commissioners had been correctly advised as to the construction of the law, it should be given a reasonable period of time to consider its previous action in view of the correct construction of the law, and to determine whether it wished to ratify or nullify its action previously made under the erroneous construction of the law as given by the administrative agency. The trial court then held that the Board of Commissioners acted promptly, once they were correctly advised, approved the act of the defendant Board of Commissioners in nullifying their resolution of October 14, 1963, and directed that a writ of mandamus be issued to the defendants herein directing them to pay to the plaintiffs all funds previously withheld, and to desist from making further deductions.

Intervenor, as grounds for the reversal of the trial court, relies on a single proposition. Its proposition is that under the terms of the Act, once a county exercises its option to join the Retirement System, and performs all the acts necessary therefor, such joining is irrevocable, and the county has no legal right at a later time to withdraw from participation in the plan.

■ Under the Act, each county in the state is made an "eligible employer" but must exercise its own judgment as to whether it desires to come under the Act. The manner in which a county may bring itself under the provisions of the Act is set out in 74 O.S.Supp.1963, Section 910(1), as follows:

"An eligible employer may join the system in January of any year commencing January 1, 1964. Application for affiliation shall be in the form of a resolution approved by the governing or legislative body of the eligible employer or by any other body or officer authorized by the law or recognized by the board to approve such resolution or action; provided, that no county shall become a participating employer, except by the adoption of a resolution therefor, which shall be published once each week for two consecutive weeks in the official county newspaper or, if there is none, in a newspaper of general circulation therein and no such resolution shall take effect until sixty days after its final publication, and if, within sixty days of its final publication, a petition signed by a number of electors equal to not less than five percent of the number of electors who voted at the last preceding general election in such county shall be filed in the office of the clerk of such county, demanding that such resolution be submitted to a vote of the electors, it shall not take effect until submitted to a referendum and approved by a majority of the electors voting thereon. Upon the filing of a certified copy of such resolution with the board, such election shall be irrevocable and the employer shall become a participating employer on January 1 of the year immediately following the filing of such election with the board."

■ From the above, it can be seen that three things need to be accomplished by a county, in order to come under the Act. These things are (1) the passage of an appropriate resolution, (2) the publication requirement and (3) forwarding a certified copy of the resolution to the board. If no petition demanding that the resolution be submitted to a vote of the electors is filed, then in the language of the Act, "such election shall be irrevocable". In the Board of Co. Com'rs v. Oklahoma Pub. Emp. Retire. Sys. case, supra, we held that Lincoln County, Oklahoma, after adoption of an appropriate resolution, the proper publication thereof, and the filing of the resolution with the Board, had made an irrevocable election to join the System, and could not withdraw therefrom.

In that case, above mentioned, we cited the case of New York State Employees Retirement System v. Board of Supervisors of Tioga County, 157 Misc. 87, 283 N.Y.S. 405, aff'd 251 App.Div. 198, 296 N.Y.S. 286; 278 N.Y. 496, 15 N.E.2d 434, in support of our ruling that Lincoln County could not withdraw from the plan after once electing to come within it. The facts in that case are as follows: The New York State Employees Retirement System Act contained a provision whereby a county could join the system if the board of supervisors of the county adopted a resolution to that effect. On December 15, 1930, the board of supervisors of Tioga County adopted a resolution placing the officers and employees of the county in the system. On March 2, 1931, the board of supervisors of Tioga County adopted a resolution rescinding the resolution of inclusion on the grounds that it was induced to adopt the resolution of inclusion by misstatements and misrepresentations made by a representative of the state retirement system.

The trial court then stated the questions in the case to be as follows:

"Having approved the inclusion of its officers and employees in such system, had the board any power to rescind, revoke or repeal its action; and if they did not ordinarily have such power, does the fact, if it be a fact, that the supervisors were induced to adopt the resolution of inclusion by misrepresentations, give them such power?"

The trial court then stated the law to be as follows:

"It is evident that the state, by appropriate legislation, attempted to create a retirement system for its officers and employees and those of such counties and municipalities as by appropriate action approved of the inclusion of its officers and employees. Clearly the Legislature intended this system to be permanent. It gave counties, cities, villages and towns the right of election to come in. It is significant that it gave them no power to withdraw. The apparent purpose being to create a permanent Retirement System, the power to withdraw cannot be implied. If it is, a municipality may repeatedly elect to come in or withdraw. That parties have called our attention to no applicable authorities, but a consideration of the statute and the authorities found leads us to the conclusion that the defendant county, having adopted the resolution of inclusion, had no power to rescind it."

"The defendants cite authorities to the effect that a party to a contract induced by false though innocent representations may rescind, * * *. But the relation between the state and the county here was not created by contract. It was created by legislation. The State Legislature created the Retirement System. Each county was permitted to say whether it would participate. When it elected to do so, the legislation became effective as to it. True, certain obligations grew out of the election, but these obligations were not contractual. They were in the nature of an assessment or a tax. The county is compelled to pay its share by virtue of the legislative act, the same as it is compelled to pay its share of the other expenses of the state."

"* * * assuming that the board could rescind if its adoption of the resolution of inclusion was induced by misrepresentations of fact, are any such misrepresentations alleged in defendants' affidavits? Mr. McQuirk's estimate of the normal contribution was not substantially excessive. The statute provided what membership in the system was compulsory and what the county would be required to pay as its normal contribution in the event that an employee elected to take prior service credit and paid therefor. * * * In short, the law on which the county's contributions were computed was stated in the statute. The facts on which the contribution was based, so far as then known, were in the possession of the board. It knew its payroll; no one could know what employee or officer would elect to take credit for prior serv-

ice. We do not think the alleged misrepresentations were such as to justify rescission."

The court thereupon granted the writ prayed for requiring Tioga County to make the contributions called for by the Act. On appeal, the Appellate Division of the Supreme Court of New York affirmed. An appeal to the New York Court of Appeals followed, with a similar result. It is of significance that the New York Act did not state that the decision of the Board of Supervisors to join the system would be irrevocable, while as we have pointed out above, the Oklahoma Act does. We feel that the opinion of the New York Court is quite persuasive in this matter, both as to the facts and as to the law.

■ Defendants in error argue that Garvin County has not joined the Retirement System in that there has been no ratification of the mistake made by the Board of Commissioners in the passage of their resolution of October 14, 1963, and further that it (the County) has never agreed "to contribute" to the system, as required by the statute. Defendants in error argument with reference to ratification seems to be not in point. We are not concerned with a question of ratification as such, but whether, under the facts that we have here, and in the face of the statutory enactment present, Garvin County can withdraw from the Retirement System on the grounds that it was misled by a letter from the agency authorized to administer the Act.

■ We are impressed by the fact, as it appears from the evidence, that the Board of Commissioners of Garvin County did not see fit to ask their County Attorney for advice, either at the time of the passage of the resolution of October 14, 1963 or at the passage of the resolution of January 20, 1964. Under Title 19, O.S.1961, § 185, the County Attorney of a county shall, when requested, give opinion and advice to the Board of County Commissioners. A request to the County Attorney or a cursory examination of the 1963 Session Laws, which the evidence showed to have been in the hands of the Board of Commissioners prior to October 3, 1963, would undoubtedly have given the Board of Commissioners the correct construction of the Act in question. With respect to the failure of the County to agree "to contribute" under the Act, we feel that this argument is not sound. Before a county comes under the Act, it must make an election so to do, by the accomplishment of the three requirements set out above. An agreement "to contribute" is no part of those requirements. Section 920 of the Act sets out the manner in which the participating employer's contribution is to be determined from an actuarial standpoint. Under this section, the date for this determination is set for the 15th day of July of the year in which the county comes under the plan, and on the 15th day of July each year thereafter. This same section provides that during the period January 1, 1964 to the fiscal year beginning in 1965, the participating county's contribution shall be equal to three per cent of the amount of compensation on which the members contributed during the period. Nowhere in the Act do we find that a county, or any other employer, under the Act, must enter into an "agreement to contribute" as a prerequisite to coming under the Act. By this we do not mean to imply that a county, after electing to come under the Act, does not have to take further administrative steps, within its own administrative organization, to make funds available as its contribution to the System. This, of course, it would be required to do. As we stated in Board of Co. Com'rs v. Oklahoma Pub. Emp. Retire. Sys., supra, in discussing whether or not the Act did violence to Section 26, Article 10 of the Constitution of the State of Oklahoma, quoting from the case of Wilson v. City of Hollis, 193 Okl. 241, 142 P.2d 633, 150 A.L.R. 1385:

"* * * This annual obligation is not a contractual obligation within the meaning of Sec. 26, supra, but is an obligation fixed by operation of a legislative act. * * * Once the improvement district is created and the share of the expense chargeable to the municipality is

legally fixed, the duty to raise the funds annually is mandatory. Neither the governing officials of the municipality nor any other public official charged with the performance of any duty in levying the municipality's taxes has any discretion to omit to levy to raise this money. * * *"

Defendants in error also contend that justice and equity demands that the defendant Board of County Commissioners be given a reasonable time to reconsider its original action, after it discovers that the first information it acted on in the passage of its resolution of October 13, 1963 was in error. The authorities cited by the defendants in error are not in point. It is admitted for all purposes, that the letter of advice from the Executive Secretary of Retirement System, under the date of October 3, 1963, contained erroneous information, therefore we are not concerned here with either the correctness or incorrectness of the information contained in the letter, nor with any judicial interpretation thereof, not the proper construction of it. We are concerned with the position the defendant Board of County Commissioners finds itself in after relying on this erroneous information. We do say, in this connection, that the act of the defendant Board of County Commissioners was hasty and ill-advised, in their passage of their resolution of October 13, 1963, in that they had within their power the ability and means to check and further investigate the contents of the letter of advice by consultation with their County Attorney. Likewise, their attempt to nullify the resolution of October 13, by the passage of the resolution of January 20th was not as the result of legal advice from their County Attorney, but was, as is shown by the evidence, the result of information they received from press releases.

We are concerned here with an enactment of our Legislature, profound in nature and sweeping in context, which seeks to provide a fair and reasonable retirement program for employees of the State and counties of Oklahoma. The guidelines for the operation of the Act, as set by the Legislature, are definite. Such a retirement program to be workable and actuarially sound, must be of a permanent nature, otherwise, it will fail.

As we stated heretofore in the case of Board of Co. Com'rs v. Oklahoma Pub. Emp. Retire. Sys., supra:

"The Act is not ambiguous or indefinite but, on the contrary, clearly and explicitly expresses the intent of the Legislature in making the Act irrevocable once the Resolution of the governing body has been adopted and a certified copy of the same filed with the Board."

Based on the facts and opinion of the New York case, New York State Employees Retirement System v. Board of County Supervisors, supra, and our own decision in the case of Board of Co. Com'rs v. Oklahoma Pub. Emp. Retire. Sys., supra, we must hold that Garvin County may not withdraw from the Retirement System, after doing those things required by the Act to make it a "participating employer". Therefore, we must reverse the judgment of the trial court and order the dissolution of the writ of mandamus heretofore issued.

Judgment reversed.

JACKSON, V. C. J., and DAVISON, BLACKBIRD, IRWIN, BERRY, HODGES and LAVENDER, JJ., concur.

WILLIAMS, J., dissents.

WILLIAMS, Justice (dissenting).

A department of government should not be permitted to mislead others, even though unintentionally, to the disadvantage of the latter.

I respectfully dissent.