■ Capital District Regional Off-Track Betting Corporation, Appellant, v Arthur Levitt, as Comptroller of the State of New York and as Director, Trustee and Head of the New York State Employees' Retirement System, Respondent.—Appeal from an order of the Supreme Court at Special Term, entered June 22, 1977 in Albany County, which granted defendant's motion to dismiss the complaint on the ground that plaintiff lacked standing to maintain the action. Plaintiff is a regional off-track betting corporation, established by an act of the Legislature as a public

benefit corporation (L 1973, ch 346, § 5). By resolution of its board of directors filed with the defendant pursuant to section 31 of the Retirement and Social Security Law on September 13, 1975, plaintiff elected to and did become a participating employer in the New York State Employees' Retirement System. Plaintiff thereby voluntarily subjected itself to the laws, rules and regulations governing participating employers. Subdivision c of section 31 of the Retirement and Social Security Law provides that "An agreement, made by such an employer pursuant to this section, to contribute on account of the officers and employees shall be irrevocable". Those employees of plaintiff who had continuously been members of the system since before July 1, 1973 were entitled to all benefits of membership acquired before that date. Those employed after July 1, 1973, and prior to July 1, 1976, were subject to the more restrictive provisions of article 11 of the Retirement and Social Security Law. These two classes of membership have subsequently become known as Tier I and Tier II, respectively. In 1976, responding to widespread feeling among the electorate that the cost of public pension systems had become unbearable, the Legislature enacted a new, still more restricted and less costly plan (L 1976, ch 890, § 1) which has been designated article 14 of the Retirement and Social Security Law. It is applicable to all persons becoming members after July 1, 1976, and they will be known as Tier III members. The Tier III plan requires a contribution of 3% by members thereof, and retirement benefits are reduced by co-ordination with available Social Security benefits. The attained age and length of service required for service retirement have been increased. Thus, the new plan will be considerably less costly for public employers in future years. Defendant contends that the enactment of article 14 mandates that full-time employees of plaintiff, hired after July 1, 1976, shall be members of the system and contribute thereto. Defendant has directed plaintiff to comply with this interpretation. Both plaintiff and defendant agree that plaintiff may be subject to monetary and other sanctions for failure to comply with defendant's directive. Plaintiff contends, among other things, that the provisions of article 14 are unconstitutional in various respects, particularly in relation to mandatory membership for all new full-time employees (Retirement and Social Security Law, § 500, subd b, par 4). Plaintiff claims that the amendment and the directive issued pursuant to article 14 are unconstitutional because they are too vague, particularly by reason of the failure to define the word full-time employee, and that there is no clear distinction between "full-time" and "part-time" employees. Plaintiff further contends that the directive was not issued in accordance with subdivision d of section 513 of the Retirement and Social Security Law since the directive was not publicly promulgated. It further asserts that the new plan will deprive those employees who will now be obliged to contribute to the retirement system of a portion of their wages; and finally, that if it is compelled to make retirement contributions for all of its covered employees, its profits will be diminished. Plaintiff is a public benefit corporation created by an act of the Legislature to perform a function ordinarily performed by governmental bodies—the raising of revenue for public purposes, which would otherwise be raised by taxation. It is authorized to conduct betting on horse races, an activity otherwise illegal heretofore, except when conducted by the State itself. Plaintiff has derived all its powers from the Legislature. Defendant submits, therefore, that plaintiff lacks standing to challenge the constitutionality of acts of the Legislature. It has been held that the State can alter, impair or destroy the rights of a State agency without raising any constitutional issue (*Black Riv. Regulating Dist. v Adirondack League Club,* 307 NY

475, app dsmd 351 US 922), and that "a municipality has no standing to challenge a State statute insofar as its governmental powers and duties are concerned" *(City of Buffalo v State Bd. of Equalization & Assessment,* 26 AD2d 213, 215). The general rule that a subdivision of the State cannot attack a State statute upon constitutional grounds still applies *(Matter of Jeter v Ellenville Cent. School Dist.,* 41 NY2d 283). An exception to the general rule established by *Black Riv. Regulating Dist. v Adirondack League Club (supra)* exists where the challenged State act, instead of commanding the subdivision to do something, restricts the subdivision's power. Therefore, if one subdivision may dispute another subdivision's application of a statute, one subdivision should be allowed to dispute another subdivision's interpretation of a statute. Consequently, although plaintiff does not have standing to challenge the constitutionality of either article 14 or the directive that defendant has promulgated pursuant thereto—that full-time employees of the plaintiff hired after July 1, 1976 shall be members of the system and contribute thereto—it does have standing to challenge defendant's directive on the ground that it is a misinterpretation of article 14. Special Term dismissed the complaint on the ground that plaintiff lacked standing to maintain the action and, therefore, did not reach the merits. Defendant, however, has moved for summary judgment and, since we find no triable issues of fact concerning the applicability of either article 14 or the administrative directive promulgated pursuant thereto, we will consider these questions on the merits *(Saxton v Carey,* 61 AD2d 645, affd 44 NY2d 545). When plaintiff became a participating employer in 1975, it voluntarily obligated itself to pay the full cost of pension benefits for its employees, those who were mandatory members (Retirement and Social Security Law, § 40, subd b) and those who were eligible for membership, but not required to join (Retirement and Social Security Law, § 40, subd c). Thus, if every employee eligible for membership decided to join, plaintiff could not prevent them, but would be obliged to contribute for them. An option existed for the nonmandatory employee to join or not to join; and an option existed for the Comptroller to deny membership to any class of persons serving on a temporary or other than per annum basis (Retirement and Social Security Law, § 40, subd g). There were no such options for the employer as far as membership was concerned; from the employer's viewpoint, all eligible employees were mandatory if they chose to join. The point is, however, that when article 14 made all new members mandatory, including persons not "full-time" or on an annual salary, it did not significantly expand the potential obligation of the employer. In other words, employees who would have formerly been "permissive members" now became "mandatory". Plaintiff's contention that since neither the statute nor the rules and regulations of the defendant define "full-time employee" it is impossible to determine which of its employees are full-time employees is without merit. The fact is that section 513 (subd a, par 1) of the Retirement and Social Security Law defines part-time service as "A member who works less than full time, which for the purposes of this article shall mean less than thirty hours a week". In view of this definition, there is no difficulty in differentiating between part-time and full-time employees. To the extent that plaintiff's costs will rise by the expansion of mandatory membership, it cannot seriously contend that such additional costs will, by themselves, render it no longer competitive with the private sector. To the extent that article 14 imposes additional pension costs on plaintiff as a participating employer in the retirement system, it is bound to pay them *(Matter of New York State Employees' Retirement System v Board of Supervisors of County of Tioga,*

157 Misc 87, affd 251 App Div 198, affd 278 NY 496). Plaintiff's contention that the defendant's directive was improperly issued is without merit. Order modified, on the law and the facts, by reversing so much thereof as dismissed the causes of action seeking a declaration that chapter 890 of the Laws of 1976 (§ 1) and the administrative directive dated November 18, 1976 promulgated pursuant thereto are inapplicable to the plaintiff, and by reinstating these causes of action of the complaint; judgment directed to be entered in favor of the defendant declaring that both chapter 890 of the Laws of 1976 (§ 1) and the administrative directive promulgated thereunder, are applicable to the plaintiff; and, as so modified, affirmed, without costs. Mahoney, P. J., Greenblott, Sweeney, Staley, Jr., and Main, JJ., concur.