■ In the Matter of CAROL S. WERTHEIM, Individually and on Behalf of All Other Persons Similarly Situated, Respondent, v NEW YORK CITY TEACHERS' RETIREMENT SYSTEM, Appellant. — Judgment, Supreme Court, New York County (Tierney, J.), entered March 8, 1982, which, *inter alia,* directed that petitioner be transferred from the Co-ordinated Escalator Plan (Co-Esc Plan) of Tier III to Plan A of Tier I, unanimously reversed, on the law, without costs or disbursements, and the petition dismissed. Petitioner, an in-service member of the New York City Teachers' Retirement System on June 30, 1970, was entitled, between July 1, 1970 and June 30, 1972, to elect to become a "twenty-year pension plan" (Plan A) contributor, pursuant to section B20-41.2 (subd a, par [1], cl [b]) of the Administrative Code of the City of New York. No such election was made, and petitioner was deemed a member of the "age fifty-five increased benefits pension plan" (Plan B). On September 8, 1972 petitioner submitted a certificate of termination of service. On October 10, 1972, subsequent to her resignation from membership in the system, pursuant to section B20-38.0 of the Administrative Code, she submitted an application for the return of her accumulated salary deductions, and on January 31, 1973, received a check in the sum of $5,202.18, representing her total contributions. On April 3, 1978, more than five years after her withdrawal from membership in the system, petitioner was re-employed by the board of education. When she rejoined the system she became a member of the Co-Esc Plan since membership in the Co-Esc Plan was mandated by subdivision a of section 500 of the

Retirement and Social Security Law for "all members who join or rejoin a public retirement system of the state on or after July first, nineteen hundred seventy-six". On July 1, 1980 section B20-41.2 of the Administrative Code was amended to provide that any contributor in membership service on June 30, 1972 could elect to become a 20-year pension plan contributor by filing an application between July 1, 1980 and June 30, 1981. (Administrative Code, § B20-41.2, subd a, par [1], cl [c].) Petitioner filed such an application on February 14, 1981. The retirement system denied the application on the ground that although petitioner was an in-service member on June 30, 1972, she was ineligible for Plan A since she had not returned to membership in the system within five years after resigning and withdrawing her contributions to the annuity savings fund. Special Term granted the CPLR article 78 petition, finding that petitioner, by having been an in-service member on June 30, 1972, fulfilled the qualifications for transfer to Plan A pursuant to section B20-41.2 (subd a, par [1], cl [c]). This was error and we reverse. Since the enactment of article 14 of the Retirement and Social Security Law in 1976, applicable to all public retirement systems of the State, the New York City Teachers' Retirement System is divided into three tiers (see *Capital Dist. Regional Off-Track Betting Corp. v Levitt,* 65 AD2d 842), within which are several benefit plans. The 20-year pension plan, Plan A, to which petitioner sought transferral, is part of Tier I, which is applicable to members who joined on or before June 30, 1973. (Administrative Code, §§ B20-41.2, B20-41.3.) The Co-Esc Plan, of which she necessarily became a member on rejoining the system in 1978, is the Tier III pension plan. From time to time the Legislature has authorized for a limited period a member in Plan B who otherwise qualified to elect to transfer to Plan A. (Administrative Code, § B20-41.2, subd a, par [1], cls [b], [c].) No parallel legislation, however, has ever been enacted permitting a contributing member of the Teachers' Retirement System to transfer between tiers. Review of the legislative history reveals that section B20-41.2 (subd a, par [1], cl [c]) was intended to permit Plan B members at their option to transfer to Plan A, but within Tier I. "Many members of the New York City Teachers' Retirement System will be deprived of the opportunity to retire under the 20 Year Pension Plan although they have fulfilled all of the requirements for such Retirement Benefits. The law that established the 20 Year Pension Plan required the teacher to elect to join the plan within two years. If the teacher failed to make such a timely election, they were automatically placed in an inferior Pension Plan that requires them to serve for a longer period of time and receive a smaller pension. Most of the teachers who failed to make the timely election required to join the 20 Year Pension Plan, failed to do so for reasons over which they had no control. Some teachers were in the Armed Forces and some others were on Maternity and Child-Care Leaves during the time that they were allowed to select a better plan. The purpose of the original legislation was not to penalize the members of the Retirement System, however, in many cases, circumstances beyond the control of the member made it impossible to make a timely election. This legislation would correct the injustice that occurred by reopening for one year the opportunity to now elect the 20 Year Plan for those members of the system who failed to make a timely election previously." (Memorandum by Assemblyman Lentol, sponsor of L 1980, ch 860, enacting Administrative Code, § B20-41.2, subd a, par [1], cl [c]; NY Legis Ann, 1980, p 368.) Moreover, the Governor's approval memorandum of the same bill stated in pertinent part: "This bill permits certain members of the New York City Teachers' Retirement System in service on June 30, 1972, who had an opportunity to elect during a two-year period commencing July 1, 1970, and ending June 30, 1972 to join the 20-year pension plan enacted in 1970, to now

make an election for this 20-year retirement plan by filing an election for such plan between July 1, 1980 and June 30, 1981. Many teachers who were otherwise eligible to elect this 20-year pension plan within the two-year time period permitted were unable to make such an election for reasons beyond their control — such as service in the Armed Forces, maternity leave or child care leave — and should be permitted an additional opportunity to now make that election." (NY Legis Ann, 1980, pp 368-369.) Petitioner does not fall within that class of teachers "otherwise eligible" to elect Plan A who would qualify by virtue of being on a short leave during the previous two-year period in which such election might be made pursuant to section B20-41.2 (subd a, par [1], cl [b]) of the Administrative Code. By her subsequent resignation from the system and failure to return to membership within five years, as well as her withdrawal of all her contributions from the system, petitioner forfeited any opportunity to claim membership in Tier I pursuant to section B20-5.0 of the Administrative Code. (See *Matter of O'Dwyer v New York City Employees' Retirement System,* 69 AD2d 779, affd 49 NY2d 446.) When she returned to service she had no choice but to join the Co-Esc Plan. Subdivision a of section 500 of the Retirement and Social Security Law provides that "[i]n the event that there is a conflict between the provisions of this article and the provisions of any other law or code, the provisions of this article shall govern." Thus, the provision in subdivision b of section 500 that membership in the New York City Teachers' Retirement System, *inter alia,* shall be in the manner provided by relevant provisions of the New York City Administrative Code should not be viewed as permitting entry into Plan A. Although the Administrative Code may delineate how an application for retirement system membership is to be processed, the Legislature clearly evinced an intention to restrict post-June 30, 1976 applicants solely to membership under procedures established in article 14. Under subdivision a of section 500 only a conflict enumerated in subdivision c of section 500, a section not applicable to petitioner, permits circumvention of the legislative scheme. Petitioner's sole argument on appeal is that her application was rejected because of a condition imposed by the retirement system, but not approved by the Legislature, namely, that she had to have been a member of the system within the previous five years to become entitled to Plan A membership. Yet, the record is clear that she had withdrawn from the system, and it is equally clear that the Legislature was addressing itself to those who "join or rejoin" a public retirement system on or after July 1, 1976 when it enacted article 14. Thus, the reason given by the retirement system in rejecting her application was neither arbitrary nor illusory, and petitioner's request was properly rejected since she rejoined the system after July 1, 1976. Concur — Sullivan, J. P., Ross, Silverman, Bloom and Alexander, JJ.